STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. DE-
LORES BARNES, DEFENDANT-APPELLANT.

Argued March 5, 1969—Decided May 5, 1969.

(1)

2

*Cynthia M. Jacob,* Assistant Deputy Public Defender, argued the cause for defendant-appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Cynthia M. Jacob* on the brief).

*Mr. Matthew J. Scola,* Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney; *Mr. Matthew J. Scola* on the brief).

The opinion of the court was delivered by

PROCTOR, J. The defendant was convicted by a jury of receiving stolen goods under two indictments consolidated for trial. After she had been sentenced to a seven-year maximum term under each indictment, to be served consecutively (but concurrent with a sentence being served on another offense), the conviction was affirmed by the Appellate Division in an unreported opinion. The present case is before this Court on direct appeal pursuant to *R. R.* 1 :2–1(*a*), "involving a question arising under the Constitution of the United States or this State." Since counsel had expressed some hesitancy with regard to the effect of this rule on the non-constitutional claims raised by defendant, we would like it to be clearly understood that so long as there is a proper basis for an appeal as of right, as here, we will consider all points raised in the case. *Kligman v. Lautman,* 53 *N. J.* 517, at *pp.* 522, 523 (1969) ; see *State v. Boyd,* 44 *N. J.* 390 (1965).

The facts proved by the State both at trial and on a motion to suppress the admission of the evidence, are as follows : In early December, 1966, a number of blank checks were stolen from a restaurant and from a gas station in the Newark area. These checks were later seized by the police following a search of the car which the defendant was driving at the time she was apprehended on December 29, 1966. The defendant had escaped from the Reformatory for Women at Clinton where she was serving a sentence for felony-murder. On the night of her arrest, the police had staked out a corner in Newark where she was expected to pass by in an automobile. The police had a warrant for her arrest; they also had information that she was carrying a gun. At about 10 p.m., a car being driven by the defendant and carrying three male passengers approached the intersection. The police stopped the car, ordered everyone out, searched and handcuffed the defendant, and made a cursory search of the car at the scene. Since a crowd was forming and the police feared a possible incident in the neighborhood, they pro-

ceeded to transport the car and its passengers to the street behind the county courthouse, a few blocks away, where a more thorough search of the car was made.

The defendant had been searched at the time of her arrest, and a knife was found in her pocket. She did not have any of the stolen checks on her person. During the cursory search of the car at the time of arrest, the police saw checks on the floor of the car and one of the officers asked the handcuffed defendant, "Whose stuff is this?" The defendant answered that the checks were hers. She had not been given the warnings set forth in *Miranda v. State of Arizona,* 384 *U. S.* 436, 86 *S. Ct.* 1602, 16 *L. Ed.* 2d 694 (1966). As a result of the more thorough search behind the courthouse, made in the defendant's presence, a revolver was found under the front seat of the car and more checks were found in the glove compartment.

The defendant testified that there were no checks in the car as far as she had known, but that after the arrest the checks in evidence had been taken from one of the passengers in the car. She said that she first saw the checks about an hour after she had been taken to the sheriff's office, and that she had admitted that the checks were hers because she felt she was to blame for the arrest of the others, believing that if she took responsibility for the checks they would not be prosecuted.

On this appeal, the defendant contends that because she had not been given the *Miranda* warnings prior to the officer's question, "Whose stuff is this?", her response that the checks were hers was wrongly admitted at trial in violation of her fifth amendment privileges. We interpret the rule in *Miranda* to require the four-fold warnings* whenever

---

*A suspect within the purview of *Miranda* must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. 384 *U. S.*, at 479, 86 *S. Ct.*, at 1630, 16 *L. Ed.* 2d, at 726.

a suspect is taken into custody and is "subjected to questioning." *Miranda, supra,* 384 *U. S.,* at 478, 86 *S. Ct.,* at 1630, 16 *L. Ed. 2d,* at 726. There is no doubt that the defendant had not been given the warnings and was in police custody at the time the single question was asked by the officer. The question remains, however, was she "subjected to questioning" within the meaning of *Miranda,* so as to invalidate her admission? We think not. What was comprehended by *Miranda* was a process of "custodial interrogation" which the Supreme Court found to be inherently coercive. The single question asked in this case was not part of the investigation which led to the defendant's apprehension, nor was it one of a series of investigatory queries. Most important, it was not the type of question which centered blameworthiness on the defendant. She could have attributed possession to anyone, or no one, in answer to the question directed to her. After all, there were three other occupants in the car. We do not hold, however, that any single question directed to a suspect is automatically beyond the scope of *Miranda.* As mentioned above, were the officer to have asked the defendant the kind of question which called for an admission of guilt, we might draw a different conclusion. But here the question was open-ended in its form, not focusing on any particular suspect, and unrelated to the cause of her arrest as an escapee.

There is no suggestion that prior to the defendant's arrest the police had any inkling that the defendant was connected with stolen checks, or that any checks had been stolen. The officer's question did not relate to any past conduct of the defendant, but was concerned only with objects then and there visible to those present. The defendant was not quizzed as to how or where the checks were obtained. It seems clear to us that the essence of the situation was not an officer imposing a process of interrogation upon a suspect, but an officer reacting naturally and spontaneously to the scene before him. See *Allen v. United States,* 390 *F. 2d* 476, 479 (*D. C. Cir.* 1968). In the circumstances of this case, we cannot believe that the officer's single inquiry was the kind of

custodial interrogation which the Supreme Court in *Miranda* held to be barred in the absence of prior warnings. All four defendants in that case were subjected to prolonged detention and interrogation, ranging from several hours to five days, all of which focused upon past criminal events of which each was a suspect. *Miranda, supra,* 384 *U. S.* 491–498, 86 *S. Ct.* 1636–1640, 16 *L. Ed. 2d* 733–737.

We do not find the recent Supreme Court decisions in *Mathis v. United States,* 391 *U. S.* 1, 88 *S. Ct.* 1503, 20 *L. Ed. 2d* 381 (1968) and *Orozco v. State of Texas,* 394 *U. S.* 324, 89 *S. Ct.* 1095, 22 *L. Ed. 2d* 311 (March 25, 1969), holding custodial statements inadmissible, to alter the result in this case. In *Mathis,* the defendant was incarcerated in a state penitentiary where he was subjected on two occasions to a series of questions by an Internal Revenue agent pursuant to an investigation of his past income tax returns. His incriminating statements were held to have been improperly admitted at his trial. Unlike the present situation, defendant there was already the subject of an investigation, and his incriminating answers were elicited following a series of well-aimed inquiries relating to the cause of the investigation. Similarly in *Orozco, supra,* the defendant was the prime suspect in a murder investigation. A few hours after the murder, four police officers entered his boarding house room where he was in bed and there, while he was "under arrest," they subjected him to a series of questions concerning his presence at the scene of the shooting and whether he owned a gun:

"The officers asked him if he had been to the El Farleto Restaurant that night and when he answered 'yes' he was asked if he owned a pistol. Petitioner admitted owning one. After being asked a second time where the pistol was located, he admitted that it was in the washing machine in a back room of the boarding house." 394 *U. S.,* at 325, 89 *S. Ct.,* at 1096.

These admissions without the *Miranda* warnings were held to have violated the defendant's fifth amendment privileges.

See also *People v. Shivers,* 21 *N. Y. 2d* 118, 286 *N. Y. S. 2d* 827, 233 *N. E. 2d* 836 (1967).

The single, general question addressed to the defendant in the present case clearly distinguishes this case from *Miranda, Mathis* and *Orozco,* all of which condemned a series of pointed inquiries made pursuant to an already-launched investigation of a past event. To hold otherwise would be to forget the admonition of Justice Cardozo that "justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament." *Snyder v. Commonwealth of Massachusetts,* 291 *U. S.* 97, 122, 54 *S. Ct.* 330, 338, 78 *L. Ed.* 674, 687 (1934). We do not believe that the holdings in the three United States Supreme Court cases cited above should be spun so finely that the defendant's answer in this case cannot be used against her. In our efforts to protect a defendant's essential privilege not to be coerced into self-incrimination, we cannot strain to bar as well those inculpatory situations which so clearly are not the product of inherently coercive police practices. There was no error in admitting defendant's answer into evidence, and thus we need not reach defendant's collateral argument that the search of the car was a tainted "fruit" of her admission.

■ Defendant next contends that since the police had no search warrant, the checks which were taken from the glove compartment of the car as the result of the thorough search behind the courthouse were the product of an illegal search and seizure in violation of the fourth amendment. [Checks which were found on the floor of the car were admissible regardless of a warrant because they fell within the plain view of an officer who had a right to be in the position to have that view. *Harris v. United States,* 390 *U. S.* 234, 236, 88 *S. Ct.* 992, 19 *L. Ed. 2d* 1067, 1069 (1968).] Defendant cites *Preston v. United States,* 376 *U. S.* 364, 84 *S. Ct.* 881, 11 *L. Ed. 2d* 777 (1964), as authority for invalidating the search in the present case. Defendant does not assert

that her arrest was unlawful, nor does she contend that a warrant is necessary for a search made as incident to such an arrest. She claims, however, that as in *Preston,* the search of the glove compartment was too remote in time and place to be properly considered as incident to the arrest.

We think that defendant's reliance on *Preston* is misplaced. In *Preston,* the defendant was arrested for vagrancy. After he was taken to police headquarters and booked, his car, which had been towed to a garage, was searched by the police and incriminating articles were found. The later Supreme Court case of *Cooper v. State of California,* 386 *U. S.* 58, 87 *S. Ct.* 788, 17 *L. Ed. 2d* 730 (1967) makes it clear that besides remoteness in time and place, the conviction of the defendant in *Preston* was reversed because the search was totally unrelated to the vagrancy charge for which he was arrested. 386 *U. S.,* at 61, 87 *S. Ct.,* at 791, 17 *L. Ed. 2d,* at 733. In the present case, Delores Barnes was arrested as an escapee from prison and the police had been informed that she was armed with a gun. These facts, obviously showing a criminal event and the likely presence of the implements thereof, make the search of defendant's car reasonable, whereas in *Preston* there were no instruments of vagrancy which the police could reasonably search for. As we said in *State v. Fioravanti,* 46 *N. J.* 109, 124 (1965), cert. denied, 384 *U. S.* 919, 86 *S. Ct.* 1365, 16 *L. Ed. 2d* 440 (1966), concerning the search of the car of a suspected burglar after he had been taken into custody: "[T]he search [in *Preston*] was not related to a known criminal event but rather was in part a search for such an event. In the case before us, there was a known criminal event and the police were looking for the instruments and the fruit of that event." Nor was the search in this case which was made in the presence of the defendant immediately following the cautious removal of the automobile to a safer environment a few blocks away, so remote in time or place so as to come within the *Preston* prohibition. In *Fioravanti, supra,* in this regard, we said:

"[W]e doubt that *Preston* can be read to mean that a search which would be valid at the moment of arrest must be made at that precise moment even though a more prudent or equally prudent course is to move the car and its occupants to a more convenient or suitable place for the search." *Id.* The Constitution prohibits only those searches which are unreasonable; the actions of the police in the present case did not violate the constitutional standard, and thus the checks were properly received in evidence. It must be remembered that ordinarily an automobile is not to be accorded the same measure of privacy in applying fourth amendment standards as a person's home or place of business. See *Carroll v. United States,* 267 *U. S.* 132, 45 *S. Ct.* 280, 69 *L. Ed.* 543 (1925); *State v. Boykins,* 50 *N. J.* 73, 81–82 (1967).

Defendant further contends that by sentencing her to consecutive sentences pursuant to the two consolidated indictments, she is in effect being punished twice for the same offense. We agree. Although the checks were undoubtedly the product of two separate thefts, *i. e.,* from a restaurant and from a gas station, there was no evidence in the case that the checks were *received* separately. While consecutive sentences would be warranted following a conviction for the two thefts, in a receiving stolen goods case the burden is on the State to show that the receipt of the goods occurred separately. *State v. DiRienzo,* 53 *N. J.* 360, at *pp.* 386, 387 (1969). The State has not met this burden. We therefore hold that the two consecutive maximum sentences of seven years should be deemed to be a single maximum sentence of seven years, to be served concurrently with the term now being served by the defendant.

We have examined the defendant's other contentions and find them to be without merit and to warrant no discussion.

The judgment of the Appellate Division upholding the conviction is affirmed and the sentences are modified in accordance with this opinion.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 7.

*For reversal* — None.