106 N.J. Super. 295 (1969)
255 A.2d 777
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LONNIE JOHNSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 16, 1969.
Decided June 30, 1969.
*296 Before Judges CONFORD, KILKENNY and LEONARD.
Mrs. Miriam N. Span, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Matthew J. Scola, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
The substantial question here is whether a written confession given the police by defendant as to his participation in a gas station robbery on South Orange Avenue, Newark, was admitted in evidence erroneously because of the absence of timely warning to defendant of his rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). Defendant was convicted of the crime.
A preliminary hearing on admissibility of the confession in relation both to compliance with Miranda and voluntariness was held out of the presence of the jury. At the hearing Detective Bostic of the Newark police testified that defendant surrendered himself at police headquarters the evening of October 5, 1967, saying that he understood from his wife that detectives had been at the house looking for him "in connection with another crime," i.e., other than the gas station robbery. He was promptly arrested for the other crime and remained in custody over night. The record does not indicate that he confessed to the other crime.
Bostic testified that on the morning of October 6, 1967, having received information that defendant was involved in the South Orange Avenue gas station robbery, he began an *297 interrogation of him. Bostic's first question to defendant, before giving him any of the Miranda warnings,[1] was whether he knew anything about the holdup on South Orange Avenue. Defendant's response was that he wanted to make a "clean sweep." Thereafter Bostic informed defendant of his Miranda rights, and presented to him a written waiver of all such rights, which defendant signed. Thereupon, on further inquiry, defendant confessed his complicity in the robbery, the confession was put into written form, and defendant signed it.
The trial court overruled defendant's objection to admission of the confession on the ground that it was obtained after the Miranda warnings were given; that the only effect of failure to give the warnings before the commencement of the interrogation was to prevent the State from introducing into evidence anything incriminatory said by defendant before the warnings were given and waiver obtained, but not to exclude anything said by defendant subsequent thereto.
Under the circumstances here present, we are firm that the trial court erred. The Miranda opinion itself states and emphasizes five or six times that the warnings must be given at the outset of any interrogation of a suspect of a crime in police custody. Our own Supreme Court says that the Miranda warnings must be given whenever a suspect is in custody and "is subjected to questioning." State v. Barnes, 54 N.J. 1, 5-6 (1969). While violation of that enjoinder might not be fatal in relation to any nonincriminatory response to such interrogation made before the warnings, it clearly is fatal to the entirety of an ensuing confession if it is preceded by an incriminatory response elicited before the warnings are given and an effective waiver obtained from the suspect. This is what occurred here.
This situation is not comparable with State v. Barnes, supra, where the question was asked of a defendant, being *298 sought for escape, present in a car with others, "Whose stuff is this?", in reference to some checks seen on the floor of the car. There defendant, who made an incriminatory response, was not at all a suspect of any crime related to the checks. The court stressed that the question did not focus "on any particular suspect." (At p. 6)
Certainly Miranda will not stand the interpretation that the police need not give the warnings to a known suspect, as here, merely because the form of the interrogation is: "Do you know about the x robbery?" rather than: "We know you did the x robbery. Tell us about it." The inherently compulsive effect of all custodial interrogation of a suspect is presumed, the purpose of the rule being prophylactic. Miranda, at p. 467, 86 S.Ct. 1602.
Defendant was a suspect of this particular crime when the interrogation began that morning. Bostic said so. When, on specific query concerning this crime, defendant said he wanted to make a "clean sweep" (undoubtedly meaning a "clean breast of it," in common parlance), Bostic could have had little doubt that defendant was telling him he was involved in the crime. At the very least, that interpretation is, if not the only conceivable meaning of such a remark, a common and generally taken signification of it. The trial court did not find that this did not constitute self-incrimination, and we conclude it plainly did. Miranda applies regardless of the degree of self-incrimination evoked in violation of the rule. (At pp. 476-477, 86 S.Ct. 1602).
Once defendant, unarmed with the necessary warning of his rights, confirmed Bostic's suspicions of his involvement in this crime with his first response to Bostic's initial probe, defendant's psychological defenses against full self-incrimination were down, contrary to the policy implicit in the very rationale of the Miranda rule, and the giving subsequently of the Miranda warnings could not have had the protective effect, as to this defendant, against unadvised self-incrimination envisioned by the United States Supreme Court in formulating the doctrine. Looked at another way, the full *299 confession was tainted by the poisonous tree of the illegally accomplished initial, general self-incrimination by defendant, cf. Wong Sun v. United States, 371 U.S. 471, 487-488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and the poison could not be purged by the later Miranda admonition to defendant. Defendant's psychological capacity effectively to use the warnings, when given, against further self-incrimination, had been dealt a crippling blow as a result of the blanket incrimination effected without the warnings.
Since we think a reversal and a new trial must attend the foregoing conclusions, we need not deal with defendant's other assertions of error, except to warn that the State must be careful not unjustifiably to refer to prior criminal involvement of a defendant where not offering to show a conviction relevant to credibility.
Reversed and remanded for a new trial.
KILKENNY, J.A.D. (dissenting).
I do not agree with the majority's holding that, under the facts herein, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), requires a reversal of defendant's conviction of robbery. In my view, the Miranda warnings were duly and timely given, under the circumstances, before defendant confessed his participation in the robbery. Accordingly, I would affirm the judgment of conviction.
There was ample proof that a robbery was perpetrated on October 3, 1967, at about 11:45 P.M., at a gas station located at 347 South Orange Avenue, in Newark. The station attendant was robbed of about $100 in cash by a bandit who brandished a short-barreled revolver and demanded the turnover of the money. While expressing a desire not to kill one "of his own kind," the robber pointed the revolver "right straight" in the victim's face.
Two days later, police went to defendant's home and told his wife that they wanted him to come to the police station to be questioned about "some other crime." The wife told her *300 husband and he voluntarily appeared at the station in connection with this other matter. He was not placed under arrest or accused of committing the South Orange Avenue robbery. On the morning of October 6, Detective Bostic, a police veteran of 12 years and assigned to the bandit squad, introduced himself to defendant. The detective testified that he had some "information," not otherwise specified, that defendant was "involved" in the robbery at 347 South Orange Avenue. He did not reveal the information to defendant, or how he might be involved, or accuse him of any participation in that robbery. Bostic then asked defendant only a single, general question, to wit:
"Do you have knowledge of any robbery on South Orange Avenue?"
No Miranda warnings preceded this first and single question.
Instead of giving a simple "yes" or "no," which would have been a proper response to the question and not per se inculpatory either way, defendant volunteered the nonresponsive answer that "he wanted to make a clean sweep of everything." At this point, before any other questions were asked and before defendant was permitted to make his "clean sweep," he was given the four-fold warnings required under the Miranda rule. He persisted in his desire to make a "clean sweep," waived his rights as recited in the preamble of the statement, and answered voluntarily the questions put to him by the police. He portrayed his role in the South Orange Avenue robbery as the driver of the get-away car. He named the two confederates with whom he planned the robbery and assisted in its commission.
While defendant at trial challenged the voluntariness of his written, signed and witnessed inculpatory statement, the trial judge determined preliminarily its admissibility as having been voluntarily made and the jury ultimately presumably resolved that it was voluntary, as evidenced by its verdict.
*301 Miranda does not invalidate every answer to a police question unless the specified warnings are first given. To come within the rule, there must be a so-called "custodial interrogation." This means that the questioning initiated by the law enforcement officers must have been after a person "has been taken into custody" or otherwise deprived of his freedom of action in any significant way. The Miranda rule is a reflection of the privilege against compulsory self-incrimination. But a person may waive his rights to remain silent and to be assisted by counsel at a custodial police interrogation, provided the waiver is made voluntarily, knowingly and intelligently. There was evidence of such a waiver in this case. There was evidence herein that defendant was fully advised of his rights before giving his statement to the police of the facts of his criminal participation.
As stated in Miranda:
"There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime * * *. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (384 U.S., at p. 478, 86 S.Ct., at p. 1630; emphasis ours)
When defendant was asked if he had "knowledge" of "any" robbery on South Orange Avenue, and "volunteered" that he wanted to make "a clean sweep of everything," there was no compulsory self-incrimination. Miranda, as noted in the quotation above, does not require the police to stop a person who wishes to confess a crime. The police in this case did more than merely let defendant talk on. They stopped him from furnishing his "clean sweep" until after he had been fully warned as to his rights. That such a warning had not preceded the first general question and defendant's volunteered willingness to tell "everything," the incriminating story after full warnings given would not and should not preclude the detailed questioning and answers that followed the warnings. After all, a promise to make "a clean sweep," without more, would not per se support a conviction.
*302 In State v. Barnes, 54 N.J. 1, 5 (1969), Justice Proctor pointed out that the rule in Miranda requires the four-fold warnings whenever a suspect is taken into custody and is "subjected to questioning." He found in the Barnes case that the single question, "Whose stuff is this?", relating to checks on the floor of a car stopped by the police, was not a case where defendant was "subjected to questioning" within the meaning of Miranda, so as to invalidate her admission that the checks were hers, even though no prior Miranda warnings had preceded the single question. There, as here, as Justice Proctor aptly observed:
"Most important, it was not the type of question which centered blameworthiness on the defendant." (at p. 6)
As in the Barnes case and for the reasons therein expressed, the single, general question addressed to defendant in the present case, and his volunteered statement, not directly responsive to the posed question, clearly distinguish this case from the recent decisions in Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), and Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (March 25, 1969). In the words of Justice Proctor:
"In our efforts to protect a defendant's essential privilege not to be coerced into self-incrimination, we cannot strain to bar as well those inculpatory situations which so clearly are not the product of inherently coercive police practices." (54 N.J., at p. 8).
So say we in the instant case.
I agree with so much of the majority opinion as finds no substantial merit in any of the other grounds asserted by defendant in his argument for a reversal.
I favor affirmance of the judgment of conviction.
NOTES
[1] The stated time sequence, which is not disputed by the State, is made clearer by Bostic's testimony before the jury.