116 N.J. Super. 449 (1971)
282 A.2d 763
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MACK WADE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1971.
Decided October 19, 1971.
*450 Before Judges KILKENNY, LABRECQUE and LANE.
Mr. Louis Ruprecht argued the cause for appellant (Messrs. McGlynn, McGlynn, Ruprecht & Graham, attorneys, *451 by designation of the Public Defender of the State of New Jersey.)
Mr. John P. Goceljak, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph D.J. Gourley, Passaic County Prosecutor, attorney.)
The opinion of the court was delivered by KILKENNY, P.J.A.D.
Defendant was found guilty by a jury of robbery, N.J.S.A. 2A:141-1. He was sentenced to be confined in the New Jersey State Reformatory for Males, Youth Reception and Correction Center at Yardville, for an indeterminate term. Defendant appeals from the judgment of conviction.
Before considering the several grounds advanced for a reversal, we summarize the factual background as demonstrated by the trial testimony.
On January 12, 1970, about 4 P.M., Ada Wilkes was walking in the road up Buffalo Avenue, in Paterson, the sidewalks being covered with ice and snow. She was on her way home, after having mailed a letter. She was facing the traffic when a car sped by her with two Negro occupants. It was a dark blue car with a black vinyl top bearing New York license plates. When she came to the intersection of Buffalo and Raritan Avenues, it stopped very abruptly. "The door opened and one of these negro fellows got out, left the door open. The driver of the car remained in the car. He kept racing the engine."
The fellow who left the car walked toward Mrs. Wilkes, brushed her arm, "his eyes just pierced me." She immediately became suspicious. He asked her if she knew where a Nutley Street was and, though she replied "no," he kept asking the question two or three times while he kept looking at her and at her purse. He then "flipped" her in the air. He punched her in her right breast, knocked her to the ground, fractured two ribs and caused other painful injuries. After having seized Mrs. Wilkes' purse, the assailant leaped *452 to the open door of and entered the waiting and engine-roaring car, which then sped away.
Mrs. Wilkes was able to identify her assailant and did so at detective headquarters a very short while after the police caught up with the get-away car near the scene of the robbery. She also identified her purse which the police had found on the floor in the front of the car when they arrested the two Negroes  the actual robber of Mrs. Wilkes and the defendant who was then driving the car. She was not able to identify defendant as the driver of the car who had kept its engine running and roaring at the scene of the robbery.
At the time of the robbery, Officers Torres and Robinson of the Paterson Police Department were on plain clothes duty in the vicinity of the incident in an unmarked car. After receiving a call over the car radio giving a description of the automobile used in the robbery and the details of the "mugging," they observed nearby a Pontiac matching the description of the automobile, with New York license plates and two Negro male occupants. This was about a five-minute drive away from the scene of the robbery. Police Officer Torres identified defendant Wade in court as the driver of this car. Defendant was asked at the point of stoppage by the police for driver's license and registration first and could not produce either. A purse, later identified by Mrs. Wilkes at headquarters and at trial as the one taken from her, was seen by the police on the floor in the front of the car on the passenger side. Defendant and the passenger were thereupon arrested and brought to headquarters. The purse was there turned over to Detective Zdanis.
Officer Robinson corroborated the testimony of Officer Torres as to receiving the dispatch over the radio, observing the car with New York license plates and two Negro male occupants, following the car, stopped by a red light, approaching it, seeing defendant in the driver's seat (identified in court as the driver), seeing the purse in the front of the car on the floor (also identified in court), forcing the car *453 door open, which defendant had tried to lock and which Robinson opened by force, handcuffing the men and then bringing them to headquarters.
Robinson testified, out of the presence of the jury, that "at the scene of apprehension" he personally advised defendant as to his rights and also advised him at headquarters. The advice was that defendant "had the right to remain silent * * * anything he said would be and could be held against him in a court of law. If he didn't have an attorney we would supply one to him." Robinson stated that defendant said at the scene that he understood his rights and nothing else "until he got to headquarters." There, Detective Zdanis advised defendant similarly as to his rights in Robinson's presence and defendant stated he understood his rights and would accept being interrogated. Robinson did not hear the interrogation.
Officer Torres testified out of the presence of the jury that, on the way to headquarters, defendant "said that he was driving the car. He didn't hit the lady, it was his buddy who did it." The trial judge found specifically that defendant was not properly advised of his rights at the scene of the arrest for want of completeness and excluded all admissions made prior to the complete recital of his rights at police headquarters, where his rights were fully read to defendant from a chart on the board. He found, however, that "the oral statements [at headquarters were] voluntary and admissible."
During the course of Officer Torres' testimony before the jury, he stated:
I was there when he said that he didn't assault the lady. He was  his partner, he was waiting in the car. He drove the car. I heard that. I heard when he admitted to the stolen car. (Emphasis added).
Defense counsel thereupon moved for a mistrial on the ground that the statement was "entirely irrelevant to this case," as well as being inflammatory and prejudicial to defendant. The prosecutor suggested that the matter "can be *454 cured by proper instruction from the Court"; and he added that this one utterance "is not prejudicial to cause a mistrial." The trial court denied the motion for a mistrial on the ground that the State was permitted to offer evidence for the purpose of establishing motive, plan, the absence of mistake or accident.
Defendant, according to testimony of Detective Zdanis who questioned him at headquarters, orally stated to the detective "that he was driving the car. Robert Davis took the purse to get money to buy gas for the car." On the voir dire examination of Detective Zdanis, conducted without the jury's being present, the detective had also testified that defendant had orally told him that the vehicle itself had been stolen and the purse was taken to get gas money for the car. However, the prosecutor cautioned the detective that when the jury returned he was "not to mention anything about the stolen car." The detective complied therewith in his testimony before the jury.
Defendant testified in his own behalf. He stated that he was given a ride by Davis, who let him drive. They were stopped by the police shortly thereafter. He denied ever having made any statements to the police.

I
Defendant contends initially that the trial judge never specifically found that defendant made the admissions to which Detective Zdanis testified. Although the trial judge referred to the statements as "alleged," he did find they were voluntary and admissible. Implicit in such a finding is that defendant made those statements. The issue of fact was for the jury. This contention is spurious.
Likewise is the assertion that a finding, if made, is against the weight of the evidence. State v. Johnson, 42 N.J. 146, 161 (1964). A trial judge's findings of fact "should not be disturbed unless they are so wholly unsupportable as to result in a denial of justice * * *." Greenfield *455 v. Dusseault, 60 N.J. Super. 436, 444 (App. Div.), affirmed o.b. 33 N.J. 78 (1960). Such is not the situation here. In the instant case there was sufficient evidence to support the findings. An investigating officer heard the oral admissions of defendant. The fact that his report notes no such oral admissions does not make the finding "so wholly unsupportable as to result in a denial of justice."

II
Defendant also maintains that, since the admission  in the police car  was held inadmissible because of a failure to satisfy Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the second one at headquarters, though after Miranda compliance, must also be excluded. The rationale is that the second admission was tainted. Defendant argues that once he had admitted his involvement no elucidation as to his rights could properly equip him to exercise those rights. See United States ex rel. B. v. Shelly, 305 F. Supp. 55 (S.D.N.Y. 1969), affirmed 430 F.2d 215 (2d Cir.1970). In that case, a sixteen-year-old boy, after a night of drinking at a family wedding, had stolen a car in the company of a friend. They were stopped by the police and attempted to escape but defendant was apprehended. After insufficient Miranda warnings, he was questioned and admitted his guilt; the warnings were immediately properly given and he again repeated the story. The court held all admissions should have been excluded.
[W]hen a suspect, in the rapid sequence of events present here, has already admitted his guilt, he will be far less likely to give intelligent consideration to later requests to waive his right to remain silent and to have counsel present, since he will regard them as meaningless. Id. at 218.
See also State v. Dickson, 82 N.M. 408, 482 P.2d 916 (Ct. App. 1971).
*456 In United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947), defendant confessed prior to being properly arraigned. That confession was excluded, but one given after arraignment was admitted. Though affirming the action, the court indicated: "In such a sense, a later confession always may be looked upon as fruit of the first." Id. at 540, 67 S.Ct. at 1398. The court also indicated that the mere fact that defendant had been disabled from making a usable confession at one time would not make him permanently disabled. The disability could be removed.
Thus, in United States v. Shea, 436 F.2d 740 (9th Cir.1970), the court held that a second confession was admissible where proper Miranda warnings intervened. The court said:
Here, the illegal taint, if any, of the first confession was completely removed by the full explanation to appellant of his Miranda rights prior to his making the second statement, the only one received in evidence. Id. at 742.
Defendant cites State v. Johnson, 106 N.J. Super. 295 (App. Div. 1969), to support his position. There at the outset of the interrogation defendant, unadvised of his rights, was asked if he knew "anything" about a certain robbery. Instead of a simple affirmative, non-inculpatory answer, he replied that he wanted to make a "clean sweep." Before he could say anything more, he was then fully advised of his rights and, notwithstanding, make a statement. It was held by a divided vote of our court that the ultimate confession "was tainted by the poisonous tree of the illegally accomplished initial, general self-incrimination by defendant." Id. at 299. The dissenting judge stated, however, that the original response was not barred by Miranda in that it was not the result of "interrogation." Significantly, the Supreme Court reversed for the reasons set forth in the dissent. 55 N.J. 331 (1970). They added that the evidence *457 did not "support a finding that the warnings were ineffective on the thesis that the defendant felt `the cat was already out of the bag.'"
Nor is Westover v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), applicable. In that case defendant, unadvised of his rights, had been questioned at length by local police. The FBI were called in and, shortly after he was advised of his rights, he confessed. The court held that, in light of the impact of the continuous period of questioning while unadvised, an intelligent waiver of constitutional rights could not be assumed.
In the instant case, defendant's rights were fully and completely explained to him at the police station and yet he consented to the "questioning." The trial judge found that he understood those rights and that the statement was voluntary. The second statement can therefore be considered to be free from the taint of the first.
The evidence herein was properly admitted.

III
Defendant next argues that the court erred in not explaining to the jury the burden of proof to be borne by the State in establishing that defendant had waived his rights prior to making the statement. The trial court clearly explained the three-fold finding which the jury had to make, namely, (1) that the defendant made the statement after he was advised of his constitutional rights, (2) that the defendant knowingly and intelligently waived such rights, and (3) the statement was given voluntarily. Although he did not emphasize it at that point, it was fully explained to the jury that the burden of proof was on the State to prove the elements of the crime beyond a reasonable doubt.
Moreover, no objection was made or exception taken. It does not appear that the jury was misled, and the error, if any, did not have the clear capacity to bring about an unjust result. R. 2:10-2.

*458 IV
Defendant also complains that the court did not charge larceny or larceny from the person. There were no requests to charge these crimes. Nor was there evidence which would support either of them. It is uncontroverted that Mrs. Wilkes was "robbed." The controverted issue in the case was the identity of the man driving the car. Nor is there any evidence that the assailant "exceeded authority" in robbing. The failure to charge these lesser crimes does not demand a reversal.

V
Defendant claims that the prosecutor's use of terms "mugging" to describe the robbery, and "criminal" in referring to defendant, denied him a fair trial. It is significant that the term "mugging" was first used by Mrs. Wilkes, and that defendant did have a prior conviction. Even if the prosecutor's remarks were considered improper, it is difficult to see them as so exceeding the bounds of fairness and propriety as to require a reversal. The criminal trial is not conducted with the sobriety of a lecture hall, and both defense attorney and prosecutor will make appeals to the emotions. State v. Johnson, 31 N.J. 489, 510-511 (1960); see also State v. Wilson, 57 N.J. 39, 50 (1970). We find no valid basis for a reversal because of the claimed improper conduct on the part of the prosecutor.

VI
The trial judge held that the testimony by Officer Torres that he heard defendant refer to the automobile driven by him as "stolen," was in fact admissible under Rules of Evidence, rule 55, citing State v. Kociolek, 23 N.J. 400 (1957), and State v. Smith, 55 N.J. 476 (1970). Under that rule evidence of other crimes is admissible "to prove some other fact in issue including motive, intent, plan, *459 knowledge, identity, or absence of mistake or accident." In the instant case, the trial judge found that the fact that defendant admitted the auto had been stolen showed a "plain" or "motive" since the victim had been robbed to obtain money to pay for gas. However, it does not so follow logically. The status of the car as stolen or owned adds nothing to the issue of defendant's involvement in the robbery. The rule was intended to have been utilized carefully and evidence admitted only where absolutely necessary. See Report of the New Jersey Supreme Court Committee on Evidence, 103 (1963). This evidence should not have been admitted.
However, in light of the overwhelming evidence of defendant's guilt it would be difficult to consider this reversible error. If the jurors believed the testimony of the officers that the confession was made, they would find defendant guilty. If they believed defendant, that he was an innocent companion and never made a statement, the status of the car would not affect his innocence. In light of the other evidence  the uncontradicted proof of the robbery and the strong circumstantial evidence demonstrative of defendant's participation therein  admission of this challenged item of evidence should not be considered reversible error under the totality of the proofs herein. R. 2:10-2; cf. Harrington v. California, 359 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).
The judgment of conviction is affirmed.