**STATE of Maine**

**v.**

**Thomas Joseph GRIBBIN.**

Supreme Judicial Court of Maine.

July 22, 1976.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Asst. Dist. Atty., Portland, Patricia McDonough, Law Student, for plaintiff.

Cumberland Legal Aid Clinic, Judy R. Potter, Supervising Atty., Portland, Kathryn A. Monahan and Charles J. Kean, III, Student Attys., for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD, and DELAHANTY, JJ.

PER CURIAM.*

The Justice in the Superior Court before whom this charge of willful concealment of merchandise (17 M.R.S.A. § 3501) was heard, jury waived, was confronted with testimony which was almost completely contradictory in its essential respects.

A Deputy Sheriff who was employed as security manager at the Jordan Marsh department store in South Portland testified that he observed the defendant take a pewter goblet from a display, walk behind a column with it, remove the price tag and throw it on the floor, place the goblet in a bag and then start to go down the escalator. The officer testified that he then arrested the defendant, removed the goblet from the defendant's bag, and took the defendant to the company office where the defendant received his Miranda warnings in the presence of the company's Chief of Security for New England [1] and where the defendant said he had wanted the goblet as a gift for his mother but had no money.

The 21-year-old defendant and a young companion testified that the defendant had made some purchases in the art department which he was carrying in a bag in his right hand; that he took the pewter goblet from the display with his right hand after shifting the bag to his left hand, and examined it; that he put the goblet under his arm while he read a small descriptive card

---

* The opinion in this case was written by WEATHERBEE, J. and adopted by the Court after his death.

1. The Chief of Security for New England was not a witness at the defendant's trial.

which had been in the goblet; that he did not leave the area. He said that at this moment he was arrested and that he made no admission of culpability. It is obvious that either the officer or the defendant and his friend were lying.

The Justice found the defendant guilty. There was sufficient evidence, if accepted as true by the trier of the fact, to justify the conviction. The issue was simply the comparative credibility of the witnesses.

However, the Justice undertook to articulate his evaluation of the conflicting evidence in these words:

"It is very difficult for me to make a decision on a case where the credibility of the witnesses is so far apart, and for this Court to disbelieve a person who is a Deputy Sheriff, he would commit a greater crime than the one he is accusing the person of. If this Deputy Sheriff took this witness stand and perjured himself we have very severe laws against him. I am not at this time about to make a proclamation on the evidence I have heard that the Deputy Sheriff has perjured himself."

It is the defendant's contention that the Justice's statement of the reasoning which led to his decision disclosed an a priori acceptance of the inherent truthfulness of all police officers that resulted impermissibly in a determination of guilt upon less than proof beyond a reasonable doubt.

∎ Certainly a preconceived judicial belief as to the general credibility of people of any specific group would be in conflict with the fact-finder's duty to determine the individual credibility of each witness. *See Chavez v. United States,* 258 F. 2d 816, 819 (10th Cir. 1958) *cert. denied* 359 U.S. 916, 79 S.Ct. 592, 3 L.Ed.2d 353. It is the duty of the fact-finder "to reconcile

conflicting testimony, to determine its relative weight, and to determine what part of the testimony is credible and worthy of belief." *State v. Devoe,* Me., 301 A.2d 541 (1973). The fact-finder's evaluation may include consideration of such factors as "appearance and demeanor of the witness while testifying". *State v. Miller,* Me., 252 A.2d 321, 326 (1969). Certainly, the fact-finder may also consider the nature and extent of the interest the contradicting witnesses may have in the outcome of a case as part of his effort to determine what the true facts are. 16 M.R.S.A. § 53; *State v. Jutras,* 154 Me. 198, 144 A.2d 865 (1958); 3 A. Wigmore, Evidence, § 966 (Chadburn rev. 1970).

Doubtless it was in this latter context that this Justice made his reference to the security manager's official position and not as an indication that he considered a witness's status as a law enforcement officer automatically guaranteed his veracity. However, the defendant is entitled to a decision from us based upon the record and when we put aside our personal confidence in the Justice's application of basic judicial principles, our decision is not so easily made.

∎ The unfortunately chosen language the Justice used in his attempt to explain his decision is ambiguous at best. The uncompleted thought

"and for this Court to disbelieve a person who is a Deputy Sheriff . . ."

carries an impermissible suggestion of built-in credibility which the Justice's later comment does not erase.

On this record, we are convinced that the entry must be:

Appeal sustained.

Remanded to the Superior Court for a new trial.