**STATE of Maine**

v.

**Arthur J. WHEELER.**

Supreme Judicial Court of Maine.

Argued Jan. 19, 1982.

Decided April 29, 1982.

---

David W. Crook, Dist. Atty., John Alsop (orally), Asst. Dist. Atty., Skowhegan, for plaintiff.

Charles Trainor (orally), Burton G. Shiro, Waterville, for defendant.

Before McKUSICK, C. J., and GODFREY, ROBERTS, CARTER, VIOLETTE, and WATHEN, JJ.

PER CURIAM.

After a jury-waived trial in Superior Court (Somerset County), defendant Arthur J. Wheeler and two companions, Joseph and Elmer Jenness, were convicted of night hunting. 12 M.R.S.A. § 7406(5)(B) (1981). Only Wheeler appeals. We sustain his appeal.

In the State's direct case, the Superior Court justice sitting without a jury heard testimony that on September 17, 1980, at about 9:00 p. m., Game Warden Norman Gilbert observed a car passing along two fields in Canaan that are frequented by game. The headlights of the car and a spotlight manipulated from inside the car illuminated the fields. The warden arrested Joseph Jenness, who was driving the car; his brother Elmer, who was sitting in the back seat and had a rifle; and appellant Wheeler, who was sitting in the front passenger's seat. As he was being arrested, Elmer Jenness tossed some ammunition out of sight, but not before Warden Gilbert had caught a glimpse of it. The warden later found a spotlight, designed to be attached to an automobile cigarette lighter, about ten feet from where he had stopped the car.

In the defense's case, presented by the single attorney who represented all three defendants,[1] only the Jenness broth-

---

1. The history of Wheeler's trial jointly with the Jenness brothers and of Wheeler's sole appeal demonstrates the dangers inherent in the combined representation of multiple defendants by a single lawyer. Wheeler was in a much different strategic position than either of the Jennesses. As to both of the latter, the State had significant evidence, which it did not have as to Wheeler, of acts tending to prove they had engaged in night hunting. Nonetheless, there apparently was no objection made on Wheeler's behalf to the State's motion for a joint trial of all three defendants; and, even though Wheeler did not go on the stand, Wheeler's right to test the sufficiency of the State's direct case against him was not preserved for appeal since he did not rest after the State completed its evidence.

*State v. Weese*, Me., 424 A.2d 705 (1981), decided four months before the joint trial in the

ers testified. They offered contradictory and implausible explanations for their nocturnal expedition. Although the present appellant, Wheeler, did not go on the stand, the testimony of the Jenness brothers revealed that Wheeler had been a friend of theirs for some years and had spent several hours socially with them earlier in the day prior to joining them on the nighttime drive through Canaan.

■ At the conclusion of all the evidence, the Superior Court justice found Wheeler, along with the Jennesses, guilty of night hunting. As to Wheeler, the justice said:

I was waiting for an explanation as to Mr. Wheeler's presence. The cases that this court is familiar with in regard to participation or in night hunting situations, if the party is present and had access to the instrumentality of the crime itself, then that party is guilty of the crime unless there is a satisfactory explanation for his presence.

Now there are situations in which wardens or police come across participants or come across defendants separate and apart from the locus of the crime. There is one case in which a defendant was found some distance from the locus of the crime. There were no instrumentalities near that crime and the court felt in that case the mere fact that he was, was not sufficient to find him to be guilty of the crime.

In this case, the defendant was in the car and had access to all of the instrumentalities. No explanation, other than the explanation given by the other two defendants, was offered by Mr. Wheeler.

So, I treat Mr. Wheeler in the—I assume that Mr. Wheeler's position is the same as the other defendants, namely, that they were looking for a cow in the

middle of the night on this road, and just happened to have a gun in the car.

(Emphasis added) Although we are personally confident that the justice had no intention of departing from the controlling principle that the State has the burden of proving every element of the crime, see Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), his remarks on their face suggest that he was imposing on defendant Wheeler the burden of proving the innocence of his presence with the Jennesses. In State v. Gribbin, Me., 360 A.2d 517 (1976), the Law Court was confronted with a similar situation. A Superior Court justice in explaining his decision in a jury-waived criminal case had made a remark, "ambiguous at best," that carried "an impermissible suggestion" that "a witness's status as a law enforcement officer automatically guaranteed his veracity." Id. at 518. This court, while expressing "our personal confidence in the Justice's application of basic judicial principles," declared that "the defendant is entitled to a decision from us based upon the record." Id. In the case at bar, the record on its face impermissibly suggests that Wheeler was convicted because he did not go on the witness stand to explain his presence as a passenger in the Jenness car. As in the Gribbin case, the present defendant is entitled to receive a decision from this appellate court based upon the record. As there, the entry must be:

Judgment of conviction vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

case at bar, should have put this defense counsel, who also represented both defendants in Weese, on notice of the dangers of multiple representation. Counsel bears the obligation to determine, before accepting employment by a client, whether such employment "would be likely to involve him in representing differing interests," and if so, counsel should decline that employment except with the informed con-

sent of all concerned. M.Bar R. 3.4(b), (d). Although there existed in the case at bar no circumstances such as existed in Weese that would create a responsibility on the part of the trial court to inquire into the possibility of improper joint representation, and even though as it turns out the result of this appeal is unaffected thereby, we take this occasion to bring our concern to the bar's attention.