STATE of Maine

v.

Sherrie R. COTTON.

Supreme Judicial Court of Maine.

Argued Jan. 3, 1996.
Decided March 28, 1996.

Andrew Ketterer, Attorney General, Wayne S. Moss (orally), Assistant Attorney General, Augusta, for the State.

Walter Hanstein (orally), Joyce, Dumas, David and Hanstein, P.A., Farmington, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

Sherrie Cotton appeals from the judgments entered in the Superior Court (Androscoggin County, *Delahanty, C.J.*) following a nonjury trial in which the court found her guilty of manslaughter, 17–A M.R.S.A. § 203(1)(A) (Supp.1995), and aggravated assault, 17–A M.R.S.A. § 208(1)(C) (1983). Cotton challenges (1) the trial court's denial of her motion to dismiss the indictment prior to a retrial on the grounds that a retrial of the charges against her would place her in double jeopardy and that public statements by the State would prevent her from securing an impartial jury at the second trial, and (2) the trial court's denial of her motion to sever the charged offenses. She also contends that, at the second trial, the trial court erred by its determinations that (1) the State had established the elements of *corpus delicti* to a probable cause standard prior to considering her admissions; (2) the evidence adduced at her second trial was sufficient to support her convictions; and (3) she failed to establish a basis for a new trial. Finding no error in the record, we affirm the judgments.

## I

The record discloses the following: In October, 1993, judgments were entered in the Superior Court (Franklin County, *Alexander, J.*)[1] on the jury's verdicts finding Cotton guilty of manslaughter and aggravated assault. After a hearing, the court granted Cotton's motion for a new trial on the ground that improper comments of the State in its summation had deprived Cotton of a fair trial. Thereafter, Attorney General Carpenter issued the following public statement:

> There is absolutely no doubt in my mind that she caused the death of that two month old baby and that the baby suffered a great deal at her hands going to the aggravated assault charge prior to its death and there has never been any doubt from the day that I took over this office actually and looked at the pictures of that baby.

Assistant Attorney General Ames voiced her criticism to members of the print media who quoted her as stating, *inter alia,* "The judge changed his mind.... So he made a mistake, he blew it. If he had any qualms about what I said, he's supposed to pay attention, know what he's doing, know when I'm crossing the line."

Cotton first contends that the trial court erred in failing to dismiss the charges against her on the grounds that (1) the State's ongoing pattern of misconduct placed her in double jeopardy and (2) the public statement made by the Attorney General and an Assistant Attorney General would prevent the selection of a fair and impartial jury at a retrial of the case. We disagree.

■ We review the trial court's denial of Cotton's motion to dismiss the indictment for an abuse of discretion. *State v. Swartz,* 541 N.W.2d 533, 540 (Iowa 1995) ("Trial courts have discretion to determine the appropriate sanction in response to prosecutorial misconduct. Dismissal of the charges is recognized to be a drastic step, and is a disfavored remedy.") (citing *United States v. Blue,* 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510 (1966)).

■ Criminal defendants are "protected against being 'twice put in jeopardy of life or limb' for the same offense under both the Maine and federal constitutions." *State v. Tribou,* 598 A.2d 173, 175 (Me.1991) (quoting *State v. Derby,* 581 A.2d 815, 817 (Me.1990)). "It has long been settled, however, that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting [a] first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to the conviction." *United States v. Kirk,* 70 F.3d 791, 794 (5th Cir.1995) (citing *Lockhart v. Nelson,* 488 U.S. 33, 38, 109 S.Ct. 285, 289, 102 L.Ed.2d 265 (1988)). Double jeopardy is not implicated following the granting of a defendant's motion for a new trial unless there was "a finding that the evidence was legally insufficient to support [the defendant's] conviction." *United States v. Arache,* 946 F.2d 129, 139–40 (1st Cir.1991) (citing *Burks v. United States,* 437 U.S. 1, 4, 98 S.Ct. 2141, 2143–44, 57 L.Ed.2d 1 (1978)). Here, the trial court's decision to grant Cotton a new trial was not based on the insufficiency of the evidence to support the jury's verdict. The court's determination was based on its finding that comments made by the State in its closing summation deprived Cotton of a fair trial. Because Cotton's motion to dismiss did not implicate a violation of the double jeopardy clause, the trial court properly denied her motion.

■ We find no merit in Cotton's contention that the statements of the Attorney General and an Assistant Attorney General deprived her of any opportunity to secure an impartial jury at the second trial of this matter. Following the publicity complained of, Cotton did not file a motion for a change of venue, M.R.Crim.P. 21(b),[2] nor did she

---

1. In response to Cotton's motion, venue for the trial was changed from Androscoggin County to Franklin County.

2. M.R.Crim.P. 21(b)(1) provides in pertinent part:
 > The court upon motion of the defendant shall transfer the proceeding as to the defendant to another county or division if the court is satis-

attempt to impanel a jury. Rather, pursuant to M.R.Crim.P. 23(a), she waived her right to a trial by jury and proceeded before the court. Although we do not condone ill-advised public commentary as here engaged in by the Attorney General and the Assistant Attorney General during the pendency of a criminal prosecution, Cotton cannot succeed on the claimed deprivation of her right to an impartial jury that she did not attempt to impanel.

 Nor do we find merit in Cotton's next contention that the trial court erred by denying her motion seeking separate trials for the charged offenses. We review the trial court's decision denying a motion to sever for an abuse of discretion. *State v. Fournier*, 554 A.2d 1184, 1187 (Me.1989) (citations omitted). Here, because the nature of the injuries suffered by the deceased infant formed an integral part of both offenses, a severance of the charges would require addressing much of the same evidence at the trial of each of the charges. Accordingly, the court did not abuse its discretion by denying Cotton's motion to sever the charges for the purposes of a trial.

## II

At the second trial of the matter, the record discloses the following: In the fall of 1991, Cotton lived in a room at the Sunset Motel in Auburn that she shared with her boyfriend, Rocky Crowley; her 2½–month–old son, Chase; and her 18–month–old son, Nicholas. On the morning of September 12, 1991, Frances Young, a chambermaid employed by the Sunset Motel, observed Cotton, then 17 years old,[3] standing in the parking lot of the motel screaming hysterically. On entering Cotton's motel room, Young observed Chase lying face-up on a bean bag chair. It was apparent to Young that Chase was deceased.

Detective Peter Herring of the Maine State Police interviewed Cotton on September 12. At that time, Cotton told Herring that Chase had been very fussy the previous few days, and the night before his death she and Crowley[4] had "swapped the baby back and forth until about 1:00 in the morning." She remembered feeding Chase at approximately 3:00 a.m. At some point later in the morning, Nicholas awakened her and she put a bottle in Chase's mouth. Because it was dark in the room, Cotton was unable to say whether Chase was alive at that point. She next awoke at 9:00 a.m. and discovered that Chase was deceased. Also on September 12, Cotton told Cameron Martin, a firefighter/paramedic with the Auburn Fire Department, that she had seen Chase awake at 7:30 a.m.

After making her statements to the police, Cotton took Nicholas to the home of Pearl Benner, a long-time friend of Crowley's. While there, Cotton repeatedly stated that "Rocky's going to kill me ... I'm going to jail." Gloria Robinson, Benner's sister, overheard a conversation between Cotton and Crowley in which Cotton stated, "Rocky, let's just get out of here. Let's just grab Nicholas and let's just leave the state because if anybody's going to jail, I'm going to jail."

Kristen Sweeney, the Deputy Chief Medical Examiner, performed an autopsy on Chase. As a result of her examinations, she estimated the time of death as occurring between midnight and 6:00 a.m. and opined that Chase was deceased by 7:00 a.m. on September 12. Although the body showed no external signs of trauma, x-rays revealed the existence of 30 bone fractures: 27 to Chase's ribs and 3 to his legs. In Sweeney's opinion, the fractures were the result of seven different episodes of assault, the most recent of which took place within a few hours of the infant's death. Sweeney determined

---

fied that there exists in the county or division where the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial in that county or division.

**3.** Following a hearing on juvenile petitions filed against Cotton in connection with Chase's death, the District Court (Lewiston, *Gorman, J.*) deter-

mined that Cotton should be bound over to the Superior Court and tried as an adult. We find no merit in Cotton's contention that this proceeding did not conform with all statutory requirements.

**4.** Crowley was convicted of aggravated assault of Chase in a separate proceeding.

that the fractures did not contribute to Chase's death, but their existence "immediately put [the infant's death] into the category of very suspicious death." Although Sweeney determined that Chase's death was not the result of suicide, accident or natural causes and that the fractures made the death "extremely suspicious ... for homicide," she initially reported that the cause of death was undetermined because the results of her tests and examinations were inconclusive. Without objection, she further stated that based on her review of statements secured by the police from David Walker, she amended the cause of death to asphyxia by suffocation and the manner of death to homicide. Sweeney testified that her lack of findings was consistent with the manner of death described by Walker but that if he were to recant his testimony, she would reinstate the cause of death as being undetermined.

David Walker, Rocky Crowley's brother, testified that at some point following Chase's death, Walker, Crowley and Cotton were en route to Bangor in Crowley's truck. During this ride, while arguing with Crowley about Chase, Cotton admitted that "she took a sock and stuffed it in [Chase's] mouth because he wouldn't stop crying and she went back to bed and when she got up, she ... took the sock out of his mouth and picked him [up] and he was dead."

Based on the evidence before it, the trial court found Cotton guilty of manslaughter and aggravated assault. From the judgments entered accordingly, Cotton appeals.

### III

■ Cotton contends that the trial court erred by admitting evidence of her admissions of guilt before the State met the initial requirement of the doctrine of *corpus delicti*. We disagree. In *State v. Curlew*, 459 A.2d 160 (Me.1983), although we expressed the preference for requiring evidence that would support probable cause that the death of the victim was by a criminal agency before admitting in evidence a confession or admission of guilt by the defendant, we recognized this procedural requirement was no longer necessary and the order of admission of the evidence was within the discretion of the trial

court. *Id.* at 163. Probable cause does not require proof beyond a reasonable doubt. Rather, "the quantum of proof necessary to establish probable cause is less than the level of fair preponderance of the evidence." *State v. Bradley*, 658 A.2d 236, 237 (Me.1995) (citations omitted).

■ Here, the testimony of the medical examiner that she excluded death by natural causes, accident or suicide and that the evidence of the 30 bone fractures made her "extremely suspicious" of homicide as the cause of death, "provided the court with sufficient support for its probable cause conclusion that the victim had died by a criminal agency." *State v. Cruz*, 594 A.2d 1082, 1085 (Me.1991) (citing *State v. Libby*, 546 A.2d 444, 451 (Me.1988)). Accordingly, the court was free to consider all the evidence, including Cotton's admissions, in determining whether the State had established beyond a reasonable doubt all the elements of the charged offenses. *Id.* (citing *State v. Larson*, 577 A.2d 767, 770 (Me.1990)).

### IV

■ Cotton next contends the evidence before the trial court was insufficient to convict her of manslaughter and aggravated assault. She argues in support of this contention that the court erroneously relied on the testimony of David Walker. We disagree. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether "any trier of fact rationally could find beyond a reasonable doubt every element of the offense charged." *State v. Barry*, 495 A.2d 825, 826 (Me.1985) (citation omitted). In a jury-waived trial, "[i]t is the duty of the fact-finder to reconcile conflicting testimony, to determine its relative weight, and to determine what part of the testimony is credible and worthy of belief." *State v. Gribbin*, 360 A.2d 517, 518 (Me.1976) (citation and internal quotations omitted). Our careful review of the record discloses that based on the evidence before it the trial court rationally could have found beyond a reasonable doubt that Cotton was guilty of the charged offenses.

## V

Contrary to Cotton's final contention, on the evidence before it the trial court properly determined that by the exercise of due diligence Cotton could have secured the claimed "newly discovered" evidence prior to the second trial of this case. Accordingly, the court did not err in denying her motion for a new trial on that ground. *See State v. Dechaine*, 630 A.2d 234, 236 (Me.1993) (setting forth criteria to be met to prevail on motion for a new trial on the ground of newly discovered evidence).

The entry is:

Judgments affirmed.

All concurring.