STATE OF MAINE                                    SUPERIOR COURT
ANDROSCOGGIN, ss.        RECEIVED & FILED CIVIL APPEAL
                                                  DOCKET NO. AP-08-005 /2008
                           DEC 17 2008            JAW -AND - 12/17/2008

KENNETH KARKOS,         ANDROSCOGGIN
                        SUPERIOR COURT
        Petitioner
                                                  DECISION AND ORDER

v.


SECRETARY OF STATE,

        Respondent


**BEFORE THE COURT**

Before the court is a petition filed by Kenneth Karkos (Karkos) asking for

review of the decision of a hearing officer for the Bureau of Motor Vehicles

(BMV). Pursuant to M.R. Civ. P. 80C, Karkos seeks judicial review of the BMV's

final agency action.

**BACKGROUND AND PROCEDURAL HISTORY**

The events in this case arise from an incident at Buddy T's bar in

Lewiston, Maine on November 23, 2007. An undercover police officer, Officer

Jeremy Somma (Somma), allegedly witnessed Karkos drinking in the bar,

behaving in an intoxicated manner, and then attempting to drive his motor

vehicle soon thereafter. According to Somma, Karkos almost ran into him when

he backed up his vehicle in the parking lot. Karkos claims, on the other hand,

that he never put his keys in the ignition, and was in his car simply to retrieve

business cards that he wished to distribute to others in the bar.

Following failed sobriety tests, administered by Somma, another police

officer, Officer Philippon (Philippon), transported Karkos to the Androscoggin

County Jail. According to Somma's testimony, Karkos was uncooperative and resisted arrest. At the jail, police officers physically escorted Karkos through the booking area and into a holding cell. Philippon relayed to Somma, who was not yet at the jail, that he was unable to administer the blood alcohol test to Karkos. Upon Somma's arrival, he was escorted to the holding cell where Karkos was being held. Somma claims he then read an Implied Consent form to Karkos, informing him of the consequences if Karkos did not submit to a test.

On February 5, 2008, the Secretary of State issued Karkos a notice of suspension of Karkos's license for 275 days for Operating Under the Influence (OUI) and refusing to submit to a blood alcohol test. On February 12, Karkos requested an administrative hearing with the Secretary of State regarding his license suspension. An administrative hearing was held on April 11, 2008, at which the Secretary of State introduced evidence of the Implied Consent form that Somma claimed to have read to Karkos at the time of his arrest. Karkos's signature was not on the form. During the hearing, Karkos and Somma offered conflicting testimony. In conclusion, the Secretary of State affirmed the suspension of Karkos's license for a period of 275 days pursuant to 29-A M.R.S.A. § 2521[1] for refusing to submit to a blood alcohol test and OUI.

---

[1] Title 29-A M.R.S.A. section 2521 provides in relevant part:

> 1. MANDATORY SUBMISSION TO TEST. If there is probable cause to believe a person has operated a motor vehicle while under the influence of intoxicants, that person shall submit to and complete a test to determine blood-alcohol level and drug concentration by analysis of blood, breath or urine.
>
> 2. TYPE OF TEST. A law enforcement officer shall administer a breath test unless, in that officer's determination, a breath test is unreasonable . . . .

29-A M.R.S. § 2521 (2008).

Pursuant to M.R. Civ. P. 80C, Karkos brought a timely petition for review of state agency action to this court on July 16, 2008. Karkos raises two grounds for review, asserting that the record does not adequately support the factual findings on two issues. He first claims that the hearing officer erred in determining that a police officer requested or offered Karkos the opportunity to take a blood alcohol test. Next, Karkos contends that the hearing officer erred in finding that he refused to submit to and complete a blood alcohol test.

## DISCUSSION

### I. Standard of Review.

The court may only reverse or modify an administrative agency's decision if it is based upon "bias or error of law," is "unsupported by substantial evidence on the whole record," is "arbitrary or capricious," or involves an "abuse of discretion" by the agency. 5 M.R.S. § 11007(4)(C)(4)-(6) (2008). The court cannot "substitute its judgment for that of the agency on questions of fact." 5 M.R.S. at § 11007(3). The focus on appeal is not whether the court would have reached the same conclusion as the agency, but whether the record contains competent and substantial evidence that supports the result reached by the agency. *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, 703 A.2d 1258, 1261. This court should "not attempt to second guess the agency on matters falling within its realm of expertise," and judicial review is limited to the question of "whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991).

3

## II. Does the Record Adequately Support the Finding that Karkos Refused to Submit to and Complete the Test at the Request of a Police Officer?

In order to lawfully suspend Karkos's license for refusing to submit to a blood alcohol test, the BMV must show that after a police officer provided Karkos with the required warning, Karkos failed to submit to and complete a test. 29-A M.R.S. § 2521(5) (2008). Karkos requests a reversal of the decision of the hearing officer of the BMV, suspending his license for 275 days, because he asserts that the decision is unsupported by substantial evidence on the whole record that he was requested to or given the opportunity to take the blood alcohol test, or that he refused to take the test after being given the opportunity to do so.

Before administering a blood alcohol test, a law enforcement officer is required to inform the person that failure to submit to and complete the test will: (1) result in suspension of that person's driver's license for a period up to 6 years; (2) be admissible in evidence at a trial for operating under the influence of intoxicants; and (3) be considered an aggravating factor at sentencing if the person is convicted of operating under the influence of intoxicants. *Id.* at § 2521(3). This information is also included on an Implied Consent form provided to people who refuse to submit to a blood alcohol test at the request of an officer.

Karkos contends that he was never requested to undergo a test and that Somma's testimony established that no officer ever made this request. Instead of being escorted to the intoxilyzer room upon arrival at the jail, as is standard protocol, Karkos was taken directly to a holding cell. Testimony from Somma supports the finding that Karkos was taken to the holding cell instead of the intoxilyzer room. However, Somma also testified that this was done because

4

Karkos was being resistant and uncooperative when the officers were escorting him into the jail.

Karkos also claims that Somma advised him of the ramifications of not taking a test without ever offering him the opportunity to take the test. This assertion is unconvincing based on the record as a whole. Somma testified that he read an Implied Consent form to Karkos when he was in the holding cell. Karkos did acknowledge that Somma was reading something to him from a clipboard, even though he claims that he did not understand what Somma was saying at the time. This exchange arguably afforded Karkos the opportunity to agree to take the test.

Karkos also contends that he never refused to take the blood alcohol test. In support of this contention, Karkos points to the Implied Consent form and the fact that his signature is not on it. Somma explained at the hearing, however, that Karkos refused to sign the Implied Consent form, when Somma requested his signature. This is corroborated by testimony that Karkos was uncooperative throughout his arrest.

At the hearing, Somma testified that Karkos "pretty much told [him] he wasn't going to do it." Karkos argues that this statement is mere speculation and conjecture and is hardly sufficient to establish that Karkos actually refused to take the test. However, this was only part of Somma's testimony regarding his exchange with Karkos in the holding cell. According to the record, Somma also testified that he read Karkos the required warning pursuant to 29-A M.R.S. § 2521(3), and Karkos refused to take the test. Somma specifically stated, "After [Karkos] told me he wasn't taking it, I asked him if it was a refusal." At which

5

time, Karkos again refused to take the test, using choice words to make it clear he was not willing to cooperate.

At the administrative hearing, Karkos's testimony conflicted with Somma's testimony in many respects. When conflicting evidence is presented, it is up to the fact finder to resolve conflicts and make credibility determinations. *State v. Cotton*, 673 A.2d 1317, 1321 (Me. 1996); *Bean v. Maine Unemployment Ins. Comm'n.*, 485 A.2d 630, 634 (Me. 1984). Based on the evidence in the record, the hearing officer concluded that Karkos more likely than not was requested to take a blood alcohol test and refused to do so. Based on all of the testimony and exhibits before this court, and deferring to the hearing officer's credibility assessment, this court cannot say that the hearing officer's fact finding was clearly erroneous, that there was insufficient evidence upon which she made her determination or that the record compels a different result.

## CONCLUSION

The petition is DENIED and the decision of the Bureau of Motor Vehicles is AFFIRMED.


DATED: December 10, 2008

Joyce A. Wheeler, Justice

Date Filed 05/06/2008     ANDROSCOGGIN          Docket No. AP-08-005
                            County

Action   80 C APPEAL


KENNETH KARKOS                          SECRETARY OF STATE




                                    vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| VERNE E PARADIE, JR.<br>PO BOX 470<br>AUBURN, ME 04212 | GWENDOLYN THOMAS ESQ<br>6 STATE HOUSE STATION<br>AUGUSTA, ME 04333-006 |

| Date of Entry | |
|---|---|
| 05/062008 | Rec'd on 5/6/08<br>Appeal for Petition For Review of Final Governmental Agency Action filed ($150.00 filing fee paid) |
| 5/12/2008 | Rec'd 5/12/08<br>Entry of Appearance of Gwendolyn Thomas Esq as atty for Secretary of State also states that the position of Secretary of State is that the court should uphold the decision of the Secretary of State suspending the plt's license |
| 6/9/2008 | Rec'd 6/9/08<br>Certified Record Filed by Secretary of State |
| 6/9/2008 | Notice and Briefing Schedule 80C Appeal of Governmental Actions mailed to Verne Paradis Esq. and Gwendolyn Thomas Esq.<br>(Appellants Brief is due on or before July 19, 2008) |
| JULY 16 | Rec'd 7/16/08<br>Petitioners Brief received. |
| JULY 31 | Rec'd 7/31/08<br>Respondents Motion for Extension of Time to file Brief. |
| AUGUST 1 | Rec'd 8/1/08<br>Respondent's Motion for Extension is Granted, signed Hon. Joyce Wheeler. |
| AUGUST 29 | Rec'd on 8/28/08<br>Respondent's Brief filed. |
| SEPTEMBER 9 | Rec'd on 9/9/08<br>Petitioner's Reply to Respondent's Brief. |