**STATE of Maine**

v.

**Daniel D. NIXON.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 4, 1991.

Decided Nov. 7, 1991.

Michael E. Carpenter, Atty. Gen., Pamela Ames, Asst. Atty. Gen., Augusta, for the State.

Seth Berner, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

WATHEN, Justice.

Daniel Nixon appeals from a murder conviction resulting from a jury verdict in the Superior Court (Cumberland County, *Brennan, J.*). Defendant argues that the Superior Court should have suppressed a statement he made to the police after asserting his *Miranda* rights. Although we agree, we find that the error was harmless. We affirm the conviction, but we note that the sentence is clearly illegal and remand for resentencing.

Defendant was taken into custody after police were given information implicating him in the murder of Freeman Bernard. While defendant was being held at the Portland Police Station, he was interrogated by Detective James Daniels, who informed him of his *Miranda* rights. Defendant initially waived his right to counsel and answered questions, denying any involvement or knowledge. After about an hour, Detective Daniels broke off the inter-

view. A half hour later he returned and placed several items on the table within defendant's sight, among them a sketch of the crime scene showing the position of Bernard's body. Daniels informed defendant that several of his friends had implicated him in Bernard's murder. At that point defendant asked for a lawyer. The detective said, "OK," and began to pick up the items on the table. The detective noticed defendant peering at the diagram and pushed it toward him, saying, "You might find this interesting." Defendant then pointed at the diagram and said, "I'll tell you one thing, he wasn't there, he was over there." Detective Daniels then asked, "You said you wanted to talk to a lawyer, correct?" Defendant said, "Yes," and the detective left the room. Later that afternoon defendant was arrested and charged with Bernard's murder.

Defendant moved to suppress his post-*Miranda* statement. After a hearing, the Superior Court (*Alexander, J.*) denied the motion, finding that the act of showing defendant the sketch was not intended to elicit an incriminating response and therefore defendant's statement about the sketch was not the product of interrogation. At trial, defendant was found guilty and sentenced to forty years in prison, with all but thirty-five years suspended, and five years probation.

## I.

■ In opposing a motion to suppress a statement made after a suspect has invoked his *Miranda* rights, the State must prove by a preponderance of the evidence that the suspect was either not in custody or not being interrogated at the time the contested statement was made. *State v. Hewes*, 558 A.2d 696, 698–99 (Me.1989). A trial court's conclusion that a suspect was not under interrogation when the statement was made and that the statement was volunteered "will be upheld unless the evidence shows that a contrary inference was the only reasonable conclusion that could have been drawn." *State v. Durepo*, 472 A.2d 919, 921 (Me.1984).

■ Under *Miranda*, the term interrogation includes not just express questioning, but also "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). Defendant argues that when Detective Daniels showed him the crime scene sketch, the detective should have known that his actions would create a situation reasonably likely to cause defendant to make incriminating statements. We agree. The Superior Court, applying an incorrect standard, found that Detective Daniels did not intend to elicit a response. Had the court applied the appropriate objective standard, it would have concluded that the police officer should have known, in these circumstances, that the act of displaying the sketch was reasonably likely to elicit an incriminating response.

■ Even though we conclude that the statement should have been suppressed, vacating the conviction is not required if we find that the error is harmless. *State v. True*, 438 A.2d 460, 467 (Me.1981). Blood matching the victim's blood type was found on defendant's shoes and clothes. Numerous witnesses testified that immediately after the incident, defendant bragged about the murder and described in detail the beating he had inflicted upon the victim. The statement that defendant sought to suppress accomplished nothing more than to place him in the alley with the victim. Several of his friends testified to defendant's admission that he had been in the alley. Given the overwhelming weight of the other evidence admitted against defendant, we need not determine whether the "harmless beyond a reasonable doubt" standard announced in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) applies to a violation of a prophylactic rule as distinguished from a direct command of the Constitution. *See generally Brecht v. Abrahamson*, 944 F.2d 1363 (7th Cir.1991). The error involved in this case is harmless error even if we apply the most exacting standard.

■ Defendant was sentenced to a split term of imprisonment with probation. The illegality of such a sentence appears clearly on the face of the record and is therefore cognizable as an obvious error.[1] A sentence involving a suspended term of imprisonment with probation is prohibited for the crime of murder. 17-A M.R.S.A. § 1201(1)(A) (Supp.1990).

The entry is:

Judgment of conviction affirmed. Sentence vacated and remanded for resentencing.

All concurring.

---

**1.** The State should have moved to correct the sentence pursuant to M.R.Crim.P. 35(a).