1997 ME 215

**STATE of Maine**

v.

**Robert RIZZO.**

Supreme Judicial Court of Maine.

Argued Sept. 4, 1997.

Decided Nov. 6, 1997.

Andrew Ketterer, Attorney General, Donald W. Macomber, Asst. Atty Gen. (orally), Thomas Goodwin, Asst. Atty. Gen., Augusta, for State.

Matthew B. Nichols (orally), Laurence Gardner, Boulos & Gardner, Saco, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] Robert Rizzo appeals from judgments entered in the Superior Court (York County, *Crowley, J.*) following jury verdicts of guilty to the charges of manslaughter (Class A) in violation of 17–A M.R.S.A. § 203(1)(A),[1] and aggravated assault (Class B) in violation of 17–A M.R.S.A. § 208(1)(B).[2] Rizzo contends that (1) the court erred in refusing to dismiss the indictment against him because the State violated a court order requiring a court reporter's presence at the grand jury proceedings and, in addition, re-presented the same

---

**1.** 17–A M.R.S.A. § 203(1)(A) (1964 & Supp.1996) provides:

§ 203. **Manslaughter**

1. A person is guilty of manslaughter if that person:

A. Recklessly, or with criminal negligence, causes the death of another human being.

**2.** 17–A M.R.S.A. § 208(1)(B) (1964) provides:

§ 208. **Aggravated assault**

1. A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes:

A. Bodily injury to another with use of a dangerous weapon. . . .

Since this crime was committed with the use of a weapon, sentencing is governed by 17–A M.R.S.A. § 1252(5) (1964 & Supp.1996), which provides:

§ 1252. **Imprisonment for crimes other than murder**

5. Notwithstanding any other provision of this code, except as provided in this subsection, if the State pleads and proves that a Class A, B or C crime was committed with the use of a firearm against a person, . . . when the sentencing class for the crime is class B, the minimum term of imprisonment is 2 years. . . .

evidence to the grand jury; (2) his *Miranda* rights were violated while he was at the hospital; (3) the court improperly allowed the use of a 911 recording at his trial; and (4) the wording of the jury instruction unfairly prejudiced him. Discerning no error or abuse of discretion, we affirm the judgments.

[¶ 2] The testimony and record show the following: Rizzo and Charles Trombley were friends. On August 15, 1994 between noon and 2:00 p.m. the two were drinking at a bar in Kittery. Trombley helped Rizzo home, then returned to the bar. At 5:00 p.m., Trombley, Ernest Bahmer, and two friends met and then drank until visibly intoxicated. Bahmer and Trombley then walked to Rizzo's house and knocked loudly on the front door. Rizzo yelled repeatedly from within: "I have a gun." When Trombley entered, Rizzo recognized him, emptied the shells, and threw the shotgun on the floor. After the three drank several whiskeys and talked for a while, Rizzo discharged a handgun into Trombley's abdomen. Bahmer dialed 911, and as he was talking Rizzo "pistol whipped" him. With the phone off the hook and the 911 operator recording the fracas, the two wrestled until the police arrived.

[¶ 3] At the police station, Rizzo was informed of his *Miranda* rights, which he waived. He complained of torso pains and was taken to the hospital, where he was met by Steven Hamil, a Kittery detective. Hamil told Rizzo that he was there to safeguard him and to ask him a few questions. For about two hours Hamil observed Rizzo being examined, recording in his notebook the statements that Rizzo made, such as "I shot Charlie" and "Those guys broke in, I had to defend myself." Trombley died the following day from blood loss caused by the bullet wound.

[¶ 4] On August 26, 1994, the Superior Court (*Cole, J.*) granted Rizzo's motion for a court reporter to be present when the grand jury considered his case. The grand jury returned an indictment against Rizzo on Sep-

tember 9, 1994 for the manslaughter death of Trombley. On October 7, 1994 the grand jury returned a superseding indictment adding an additional count of aggravated assault with a deadly weapon committed against Ernest Bahmer. On May 3, 1995, the grand jury again considered Rizzo's case and returned a new superseding indictment upgrading the manslaughter charge to murder and adding an additional count of attempted murder with a dangerous weapon for his actions against Bahmer. A court reporter was present in September, but not for the October and May grand jury sessions. Following a jury trial, Rizzo was convicted of manslaughter and aggravated assault with the use of a weapon, and he appeals those convictions.

I.

[¶ 5] Rizzo unsuccessfully moved to dismiss the indictments on the grounds that at the October and May sessions of the grand jury the State violated an outstanding court order that a court reporter be present, and further that the State impermissibly re-presented the same evidence that had already been found by two grand juries to be insufficient to indict Rizzo for murder and attempted murder.

[¶ 6] The denial of a motion to dismiss an indictment on these grounds is reviewed for an abuse of discretion. *See State v. Cotton*, 673 A.2d 1317, 1319 (Me.1996); *State v. Owens*, 638 A.2d 64 (Me.1994). In refusing to dismiss the indictment, the court found that the police had submitted new evidence to the prosecutor after the first indictment. It also found that the State's failure to have a court reporter was a good faith mistake. These findings are not challenged.

[¶ 7] In support of his argument that the prosecutors have a duty not to seek indictments from the grand jury that are not actually supported by the available evidence,

Rizzo relies on *State v. Lagasse*, 410 A.2d 537 (Me.1980). In *Lagasse* we cautioned prosecutors to "carefully evaluate [the] evidence to determine whether in fairness to the defendant the charge ... ought to be dismissed before the trial commences." *Id.*

[¶ 8] That language should not obscure our unequivocal rejection in that case, and others, of pre-trial motions challenging the sufficiency of evidence to support indictments. *See also State v. Marshall*, 491 A.2d 554, 557 (Me.1985) ("We have repeatedly held that courts in this jurisdiction are not authorized to inquire into the sufficiency of the evidence on which the grand jury acted."); *State v. Heald*, 307 A.2d 188, 190 (Me.1973) ("no reason to depart from our previously well established policy"); Cluchey & Seitzinger, *Maine Criminal Practice* § 6.5 at III–17 (rev. ed. 1995) ("Motions to dismiss indictments based upon the insufficiency or incompetency of the evidence presented to the grand jury in support of the indictment have no basis in Maine."). Rizzo's challenge to the sufficiency of the evidence for the indictment is without merit.[3]

## II.

■ [¶ 9] Rizzo also contends that the court erred in denying his motion to suppress statements made while he was in the presence of a police officer at the hospital. Rizzo claims that Detective Hamil's presence at the hospital while Rizzo was being treated was the functional equivalent of an interrogation. In denying Rizzo's suppression motion, the court found that Hamil would have been required to give Rizzo another *Miranda* warning had he interrogated him at the hospital, but that no interrogation took place and Rizzo's utterances were spontaneous.[4]

[¶ 10] Rizzo argues that the detective's announced intention to question is analogous to the officer's action in *State v. Nixon*, 599 A.2d 66, 67 (Me.1991), in which the detective had shown the defendant a crime scene sketch, pushing it toward him and saying "You might find this interesting." *Nixon*, 599 A.2d at 67. We concluded that in the circumstances of that case the detective should have known that the act "was reasonably likely to elicit an incriminating response." *Id.* (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980)).

■ [¶ 11] The *Innis* requirement that the trial court determine if officer Hamil's conduct was reasonably likely to elicit an incriminating response presents a mixed question of fact and law in the sense that the trial court had to make factual determination about what happened between the Officer and Rizzo and then apply a legal standard to those factual findings. While we have sometimes spoken of a clear error standard in regard to such mixed questions,[5] it is the

3.  Rizzo also argues that the indictment should have been dismissed on the grounds that the prosecutor was not fulfilling his ethical responsibility of fairness to the defendant, and that representing a matter to a different grand jury when prior grand juries have rejected a specific charge is a violation of Maine Bar Rule 3.7(i)(1). Rizzo cites no authority for his position. Moreover, because the court found that the State had presented new evidence to the grand jury, we need not address whether, in the absence of new evidence, trial courts have authority to bar resubmission of a case to a grand jury if a previous grand jury has returned a no-bill. See U.S. v. Thompson, 251 U.S. 407, 414, 40 S.Ct. 289, 292, 64 L.Ed. 333 (1920); Commonwealth v. Desabetino, 369 Pa.Super. 300, 306, 535 A.2d 169, 172 (1987); People v. Cade, 74 N.Y.2d 410, 547 N.E.2d 339, 340–41, 548 N.Y.S.2d 137, 138–39 (1989); People v. Franco; 86 N.Y.2d 493, 657 N.E.2d 1321, 1324, 634 N.Y.S.2d 38, 41 (1995).

4.  The court found:

    Detective Hamil never did question Mr. Rizzo. Instead, Mr. Rizzo blurted out a series of statements which were incriminating. I am satisfied that a mere announcement by a detective that he intends to question someone does not amount to an interrogation. Detective Hamil asked no specific questions, nor did he do anything else that would be considered reasonably likely to have elicited incriminating responses from Mr. Rizzo.

5.  *See State v. Cusack*, 649 A.2d 16 (Me.1994) (applying Fourth Amendment); *State v. May*, 608 A.2d 772 (Me.1992). When the underlying facts are not in dispute, we have consistently reviewed the trial court decision independently. *See State v. Dube*, 655 A.2d 338, 340 (Me.1995) ("A ruling on a motion to suppress based on uncontroverted facts involves a legal conclusion that we review

appellate court which must make the ultimate *legal* determination. *See State v. Cefalo,* 396 A.2d 233, 240 (Me.1979) ("[A] trial judge's findings of historical facts on relevant identification issues will be overturned only when clearly erroneous. The legal conclusions drawn from those facts, however, are subject to the independent examination and judgment of the Law Court.").[6]

[¶ 12] This approach is consistent with the U.S. Supreme Court's ultimately plenary review of lower court determinations that police conduct was the functional equivalent of interrogation. *See Arizona v. Mauro,* 481 U.S. 520, 528 n. 6, 107 S.Ct. 1931, 1936 n. 6, 95 L.Ed.2d 458 (1987) ("Our decision ... does not overturn any of the factual findings of the Arizona Supreme Court. Rather, it rests on a determination that the facts of this case do not ... satisfy the legal standard....").

[¶ 13] Hamil's announcement of an intent to question was not the functional equivalent of interrogation. Hamil's statement to Rizzo that he would be asking him some questions, without initiating any further discussion with Rizzo, is even less coercive than conduct we have held is not equivalent to interrogation. *See State v. Simoneau,* 402 A.2d 870, 873 (Me.1979) ("neutral questions which are not part of an effort to elicit a confession or admission" and threshold or clarifying questions posed by police in response to an ambiguous statement by a suspect do not constitute interrogation); *State v. Friel,* 508 A.2d 123 (Me.1986) (handing defendant arrest and search warrants not "the functional equivalent of interrogation"); *State v. Sumabat,* 566 A.2d 1081 (Me.1989) (defendant's gratuitous

statements that were *not responsive* to routine, non-interrogation questions did not constitute interrogation); *State v. Barnes,* 54 N.J. 1, 252 A.2d 398 (1969) (single question asked "was not the type of question which centered blameworthiness on the defendant"). There was no error in the refusal to suppress the defendant's statements at the hospital.

**III.**

[¶ 14] Over Rizzo's objection the trial court admitted an eleven-minute tape that was recorded after Ernest Bahmer called 911. While the phone was off the hook, Rizzo and Bahmer made audible statements and wrestled with each other as Trombley moaned in the background.

[¶ 15] The State maintained at trial that the tape established what had transpired before the police arrived. In the recording Rizzo can be heard saying to Bahmer "You're lucky I missed," which the State suggested was "relevant to show that Mr. Rizzo was conscious that he fired at Mr. Bahmer and missed him," and saying to Trombley "Charlie, you're going to die so shut up."

[¶ 16] Rizzo argues that the "only" clearly audible sounds on the tape were the cries of a dying man, and thus the risk of "inflaming" the jury far outweighed the tape's evidentiary value. Because it was incomplete the court did not allow a transcript of the call to go the jury, and the court redacted parts of the tape it found to be unfairly prejudicial. In allowing a redacted version of the tape to be played to the jury, the court found the

independently on appeal."); *State v. May,* 608 A.2d 772, 774 (Me.1992) (clear error review of suppression hearing is inapplicable where "underlying factual findings" are not disputed); *State v. Enngass,* 571 A.2d 823, 824 (Me.1990) ("[W]hen a legal conclusion based on uncontroverted facts is challenged, the judge's ruling is independently reviewable on appeal.").

**6.** In *Cefalo* we described our "special responsibility" to exercise independent review of a defendant's claim of a denial of fair treatment in a criminal proceeding:

Where the challenge is to the legal conclusions drawn from historical facts, the dispute between the parties is not so much over the elemental facts as over the constitutional significance to be attached to them. On such issues, the Law Court is in as good a position as the trial judge to determine whether the historical facts warrant [the] legal conclusion. *Id.* at 239. *Cf. Ornelas v. U.S.,* 517 U.S. 690, ——, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996) ("ultimate determinations" of reasonable suspicion and probable cause should be reviewed *de novo,* but findings of historical fact for clear error). *See generallly,* Michael R. Bosse, *Stan-*

probative value of the tape to be "very high," and the *unfair* prejudicial effect to be low.

 [¶ 17] We review a court's decision to admit evidence pursuant to Maine Rule of Evidence 403[7] for an abuse of discretion. *See State v. Thompson,* 1997 ME 109, ¶ 14, 695 A.2d 1174, 1179 (Me.1997). *See also United States v. Carbone,* 798 F.2d 21, 24 (1st Cir.1986) (admission of audiotape with poor sound quality rests within the discretion of the trial court).

[¶ 18] In the context of audiotapes, we have distinguished between unredacted tapes with inaudible and irrelevant portions, and those in which the trial court has reviewed the tape to ensure that the proponent has separated out the "vital parts." *State v. Rossignol,* 580 A.2d 152, 154 (Me.1990) (quoting *State v. Mottram,* 158 Me. 325, 184 A.2d 225 (1962)).

[¶ 19] The record shows that the court took pains to see that the tape was redacted to address Rizzo's specific concerns about prejudice, and to prevent the jury from seeing the potentially confusing transcript of the tape. It balanced the probative value of the tape with the potential for unfair prejudice, specifically noting that Bahmer's testimony had discrepancies which the audiotape could help resolve. Rizzo's state of mind was the central issue in the case, since he conceded that he caused Trombley's death. Hence the recording of the statements made to the victims is very probative. The spontaneity of these statements gives them a qualitative difference from later statements made to police officers. The admission of the tape was within the trial court's discretion.

### IV.

 [¶ 20] Lastly, Rizzo contends that the court's instruction to the jury dealing with motive was "negatively worded as to any benefit the defendant might receive." There is no error in a jury instruction if the instruction "fully and accurately informs the jury of the applicable law." *State v. Ashley,*

666 A.2d 103, 107 (Me.1995). Jury instructions "should be developed in the context of the individual case." *Id.* A review of the jury instructions in their entirety reveals that they were adequate. *State v. Michaud,* 611 A.2d 61, 64 (Me.1992).

The entry is:

Judgments affirmed.

---

dards of Review: The Meaning of Words, 49 Me. L.Rev. 367 (1997).

7. M.R. Evid. 403 states:
   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.