COMMONWEALTH *vs.* MICHAEL A. McCRAVY.

Norfolk. November 5, 1999. - February 14, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Grand Jury. Due Process of Law,* Grand jury proceedings. *Evidence,* Grand jury proceedings. *Practice, Criminal,* Grand jury proceedings, Argument by prosecutor, Sentence. *Motor Vehicle,* Operation, Homicide.

There is no legislative or constitutional bar to the resubmission of the same evidence, previously presented to one grand jury, to a second grand jury, and this court declined to recognize a limitation of such presentation to only one grand jury. [760-763]

Admittedly improper arguments of a prosecutor at a criminal trial, which did not concern the two misdemeanors of which the defendant ultimately was convicted, were not, in the circumstances, prejudicial to the defendant, in light of the judge's prompt, forceful curative instructions. [764-765]

At the trial of indictments, the prosecutor's remark that the defense was a "sham" did not, in the circumstances, require a new trial, where the defendant was convicted only of two misdemeanors on which he had virtually conceded his guilt during his own testimony. [765-766]

At the trial of indictments, wherein the defendant was convicted of speeding and operating negligently to endanger and acquitted of all homicide charges relating to the death, as a result of an accident, of a passenger in his motor vehicle, it appeared that the judge may have sentenced the defendant more harshly than he otherwise would because he believed the defendant's actions caused the passenger's death: the case was remanded for resentencing. [766-768]

INDICTMENT found and returned in the Superior Court Department on October 4, 1995.

A motion to dismiss was heard by *Sandra L. Hamlin,* J., and the case was tried before *Julian T. Houston,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Henry F. Owens, III (Bronwyn Lee Roberts* with him) for the defendant.

*Brian A. Wilson,* Assistant District Attorney, for the Commonwealth.

MARSHALL, C.J. This matter is before us on the defendant's

appeal from his conviction of driving negligently or recklessly so as to endanger the safety of the public, G. L. c. 90, § 24 (2) (*a*).[1] We transferred the case to this court on our own motion. He claims error in three respects. First, he contends that the Commonwealth impermissibly presented to the grand jury the same evidence that had already been found insufficient by a prior grand jury. Second, he challenges certain remarks of the prosecutor during his closing argument. Finally, he argues that the sentence imposed by the trial judge was unlawful because it took into account the death of the passenger in the car the defendant was driving, a homicide for which the jury had not found the defendant responsible. We affirm the conviction, but remand the case to the Superior Court for resentencing.

1. We summarize evidence of the circumstances of the accident, before turning to the indictments. On the night of July 30, 1995, the defendant spent several hours with his friend, Daniel Archibald, at a nightclub in Quincy. Shortly after the club closed at midnight, the defendant and Archibald left together in the defendant's Corvette automobile. The defendant was driving. While on West Squantum Street, a windy road through Quincy and Milton, the defendant's automobile flipped over. The circumstances leading to that event were contested at trial.

The defendant, who testified, contended that the accident had been caused when he was "cut off" by another driver speeding past him in a Porsche automobile as they approached a sharp, left-bearing curve near the Quincy-Milton line. The Commonwealth contended that the driver of the Porsche was traveling ahead of the defendant's Corvette, that the defendant had been traveling above the speed limit, was intoxicated, and had lost control of the Corvette as he entered the sharp curve.

After the accident, the defendant was able to remove himself from his vehicle. Archibald, however, was trapped in the wreckage. With the assistance of several individuals who stopped at the scene, the defendant managed to free Archibald, who was unconscious and badly injured.

Paramedics transported the defendant and Archibald to a local hospital, where Archibald was pronounced dead. A blood alcohol concentration test taken at the hospital revealed that the

---

[1]The defendant's conviction of speeding was placed on file with the defendant's consent and is not before the court on appeal.

defendant's blood had an alcohol content of 0.12 per cent.[2] Evidence that a person's blood alcohol level is 0.08 per cent creates a permissible inference that a person is under the influence of alcohol. See G. L. c. 90, § 24 (1) (*e*) (1994 ed. & Supp. 1995). Two Milton police officers then arrested the defendant at the hospital.

On September 13 and September 27, 1995, the Commonwealth presented evidence to a grand jury in Norfolk County concerning the motor vehicle accident and Archibald's death. The grand jury returned only one indictment charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor.

The Commonwealth did not proceed on that indictment. Rather, on October 4, 1995, the Commonwealth presented its case to a second grand jury in Norfolk County that returned six indictments against the defendant: (1) homicide by a motor vehicle while operating while under the influence of an intoxicating substance and while operating recklessly or negligently in violation of G. L. c. 90, § 24G (*b*); (2) homicide by a motor vehicle while operating while under the influence of an intoxicating substance in violation of G. L. c. 90, § 24G (*a*); (3) homicide by a motor vehicle while operating recklessly or negligently in violation of G. L. c. 90, § 24G (*a*); (4) operating a motor vehicle while under the influence of an intoxicating substance in violation of G. L. c. 90, § 24 (1) (*a*) (1) (1994 ed.); (5) negligently or recklessly operating a motor vehicle so as to endanger the safety of the public in violation of G. L. c. 90, § 24 (2) (*a*) (1994 ed.); and (6) speeding in violation of G. L. c. 90, § 17.

In October, 1997, the defendant was tried before a jury in the Superior Court. The defendant was convicted of two misdemeanors: negligently or recklessly operating a motor vehicle so as to endanger the safety of the public, G. L. c. 90, § 24 (2) (*a*), and speeding, G. L. c. 90, § 17. See note 1, *supra*. He was acquitted on all of the other charges. The judge sentenced the defendant to one year in a house of correction, six months to be served, and the balance suspended for two years.

2. Before trial, the defendant filed a motion to dismiss all indictments on the ground that the resubmission of the same

---

[2]At trial, the defendant contested the validity of the test.

evidence[3] to a second grand jury impaired the integrity of the grand jury process. The motion was denied. The defendant argues that order violated his right to due process and "fair presentment," as guaranteed under art. 12 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *Moran*, 353 Mass. 166, 171 (1967) ("Article 12 pertains to certain basic rights of an accused, including our equivalent of the Fourteenth Amendment's due process clause").

The right of an individual citizen to be secure from the "public accusation of crime, and from the trouble, expense and anxiety of a public trial, before a probable cause is established by the presentment and indictment of a grand jury," *Jones* v. *Robbins*, 8 Gray 329, 344 (1857), is not specifically mentioned in art. 12.[4] Cf. Fifth Amendment to the United States Constitution ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . .").[5] Nevertheless, presentment and indictment by a grand jury is "one of the great securities of

---

[3]The defendant contends that the evidence submitted to the second grand jury was the same as that submitted to the first. The Commonwealth disagrees, claiming that additional testimony, videotapes showing a reconstruction of an automobile traveling through the curve, was presented to the second grand jury. The motion judge did not make any findings whether the evidence before both grand juries was the same. A record of the proceedings before the two grand juries was not provided to us by the parties. Counsel for both parties referred to the grand jury minutes in their arguments before this court, and we have reviewed their content. See *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield*, 344 Mass. 329, 330 n.1 (1962). While we need not resolve the matter, we are persuaded that the evidence presented to the two grand juries was substantially the same. We shall assume for purposes of our discussion that the evidence before the first and second grand juries was the same.

[4]Article 12 of the Declaration of Rights states: "No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself. And every subject shall have a right to produce all proofs, that may be favorable to him; to meet the witnesses against him face to face, and to be fully heard in his defence by himself, or his counsel, at his election. And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land. And the legislature shall not make any law that shall subject any person to a capital or infamous punishment, excepting for the government of the army and navy, without trial by jury."

[5]The defendant makes no claim under the Federal Constitution. The right to a grand jury, secured by the Fifth Amendment to the United States Constitu-

private right, handed down to us as among the liberties and privileges which our ancestors enjoyed at the time of their emigration, and claimed to hold and retain as their birthright." *Jones* v. *Robbins, supra* at 342. See *Commonwealth* v. *Mayfield,* 398 Mass. 615, 622 n.3 (1986) (right to grand jury indictment as to serious crime is "constitutionally based" in art. 12); *Lataille* v. *District Court of E. Hampden,* 366 Mass. 525, 531 (1974) (same); *Commonwealth* v. *Holley,* 3 Gray 458, 459 (1855) ("The great principle asserted by the Declaration of Rights is that no man shall be put to answer a criminal charge until the criminating evidence has been laid before a grand jury and they have found probable cause, at least, to believe the facts true on which the criminality depends").

As "one of the ancient immunities and privileges of English liberty," *Jones* v. *Robbins, supra* at 344, the right to indictment by a grand jury carried no attendant limitation on a prosecutor precluding resubmission of the same evidence to successive grand juries. Rather, at common law, a prosecutor retained the discretion to resubmit a charge to a grand jury after having been dismissed by a previous grand jury. See *United States* v. *Martin,* 50 F. 918, 918 (W.D. Va. 1892) ("The doctrine in [the United States] is that the ignoring of an indictment by one grand jury is no bar to a subsequent grand jury investigating the charge and finding an indictment for the same offense"). See also 2 W.R. LaFave & J.H. Israel, Criminal Procedure § 15.2(b), at 287 (1984).

While art. 12 preserved the right of the accused to indictment by a grand jury, we have not had occasion to recognize a correlative right to limit to one grand jury, and one only, submission of the same evidence. We decline to do so now. Under Federal law, it is settled that the same matters may be considered by more than one grand jury. See, e.g., *In re Grand Jury Proceedings,* 658 F.2d 782, 783 (10th Cir. 1981), citing *United States* v. *Thompson,* 251 U.S. 407, 413-414 (1920). A minority of States restrict the resubmission of criminal charges to a second grand jury, but in each instance the restriction is the

---

tion, is not binding on the States through the due process clause of the Fourteenth Amendment. See *Hurtado* v. *California,* 110 U.S. 516, 534-535 (1884).

result of legislative enactment rather than by judicial decision.[6] See 2 S.S. Beale, W.C. Bryson, J.E. Felman, & M.J. Elston, Grand Jury Law and Practice § 8:6, at 8-36, 8-39 to 8-40 & n.9 (2d ed. 1997 & Supp. 1998). Most of those statutes require that the government first obtain leave of court before criminal charges may be resubmitted to a second grand jury. *Id.* The Massachusetts Legislature has not imposed any such requirement on Massachusetts prosecutors. Moreover, we are not aware of any judicial decision limiting the discretion of the government to resubmit a case to a second grand jury in the absence of a statute. Compare *State* v. *Rizzo*, 704 A.2d 339, 342 n.3 (Me. 1997) (declining to decide whether court may bar resubmission to second grand jury in absence of new evidence). Our decision in *Commonwealth* v. *Westerman*, 414 Mass. 688 (1993), is not to the contrary, for in that case we considered only whether a second grand jury could consider matters currently under consideration by a prior grand jury whose term had been extended. *Id.* at 702-703. See *Commonwealth* v. *Leavitt*, 17 Mass. App. Ct. 585, 590, cert. denied, 469 U.S. 835 (1984) (same).

We are asked to consider here only whether a prosecutor may present the same evidence to a second grand jury. We do not consider whether repeated submissions of the same evidence to multiple grand juries would withstand scrutiny. The Commonwealth suggests that there is no such outer limit because, unlike the protections afforded a defendant by the privilege against double jeopardy, forcing an individual to appear before multiple grand juries would not be unduly harassing. But the purpose of indictment by a grand jury is to shield "the innocent against hasty, malicious and oppressive public prosecutions." *Jones* v. *Robbins*, *supra* at 344. Whether submission of the same evidence to multiple grand juries would be inconsistent with that purpose would bear consideration. Resubmission of the same evidence to two grand juries presents no such difficulty.

[6]See Alaska Stat. § 12.40.080 (1998); Ark. Code Ann. § 16-85-513(c) (1987); Colo. Rev. Stat. § 16-5-204(4)(e) (1998); Idaho Code § 19-1403 (1997); Ind. Code Ann. § 35-34-1-6 (Burns 1998); Iowa Code Ann. § 813.2, Rule 3(4)(i) (West 1994); Minn. R. Crim. P. 18.07 (1995); Neb. Rev. Stat. § 29-1416(2) (1995); Nev. Rev. Stat. § 172.255(4) (1999); N.M. Stat. Ann. § 31-6-11.1 (1999); N.Y. Code Crim. Proc. § 190.75(3) (1993); Okla. Stat. tit. 22, § 383 (1992); Or. Rev. Stat. § 132.430(2) (1997); S.D. Codified Laws Ann. § 23A-5-18 (1998). See also Ga. Code Ann. § 17-7-53 (1997) (after two returns of "no-bill," resubmission is barred).

3. The defendant takes exception to several statements of the prosecutor in his closing argument. First is a series of statements made by the prosecutor to the effect that it was "a fact" that the defendant was intoxicated while driving and "a fact" that he killed the passenger.[7] He separately challenges the prosecutor's appeal to the jury that "the world became a worse place because Danny Archibald was killed." Finally, he objects to the prosecutor's statement that the "whole defense" was a "sham" where the prosecutor was not addressing a particular argument in the summation by defense counsel, but characterized the defendant's entire defense. All of these statements were improper, and it would appear that the Commonwealth prudently conceded as much at oral argument.[8] Defense counsel objected repeatedly and vigorously during the prosecutor's closing argument. We, therefore, consider "whether the improper statements made by the prosecutor 'constituted prejudicial error.' " *Commonwealth* v. *Santiago*, 425 Mass. 491, 500 (1997), *S.C.*, 427 Mass. 298, and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998), quoting *Commonwealth* v. *Daggett*, 416 Mass. 347, 352 n.5 (1993).

We consider first the prosecutor's multiple statements to the jury that it was "a fact" that the defendant operated his automobile while intoxicated and that he killed Danny Archibald. The Commonwealth sought to prove that the defendant was guilty of several serious offenses that required the jury to find beyond a reasonable doubt that the defendant caused Archibald's death, and that he was driving while under the influence of an intoxicating substance. It was to those al-

---

[7]The prosecutor, at various points, said that "this drunk driver . . . killed Danny Archibald"; that "it is a fact that the Defendant, Michael McCravy, killed Danny Archibald because he drove drunk"; and that "it is a fact that Danny Archibald's life ended forever for one reason, because this man chose to drive drunk."

[8]The following exchange took place at oral argument:

> *A.:*   "Moreover, the prosecutor's closing argument spanned twenty-one pages of transcript — a few fleeting remarks certainly had no effect on the jury."
>
> *Q.:*   "You are not suggesting they were proper?"
>
> *A.:*   "Absolutely not, your Honor, especially where the prosecutor declares that a particular defense was a 'sham' . . . I *don't* want to justify that in any way — I am not saying that's proper . . . ."

legations that the prosecutor addressed his improper statements. Defense counsel interrupted and the judge gave prompt, forceful, curative instructions in the midst of the prosecutor's argument.[9] The jury plainly followed those instructions: they found the defendant not guilty on all charges relating to operating a motor vehicle while under the influence of an intoxicating substance and causing Archibald's death. None of the improper statements concerned either of the two misdemeanors of which the defendant was convicted, negligently or recklessly operating a motor vehicle so as to endanger the safety of the public, and speeding. In these narrow circumstances, we conclude that these improper statements were not prejudicial to the defendant.

The prosecutor's improper statement, on two occasions, that "the world became a worse place" because Archibald was killed by the defendant, to which defense counsel also objected, is not prejudicial for the same reason. These inappropriate appeals to the jurors' sympathy were to enhance the argument that the defendant had killed Archibald, an argument that the jury rejected. The statements do not concern the defendant's conviction of speeding or of negligently operating a motor vehicle so as to endanger the safety of the public.

The prosecutor's remark that the defendant's defense was a "sham" is different, and is particularly disturbing because we have said that characterizations of that kind should not be tolerated.[10] See *Commonwealth* v. *Kozec*, 399 Mass. 514, 516-517 (1987). See also *People* v. *Dalessandro*, 165 Mich. App. 569, 578-579 (1988). But even grossly improper statements by a prosecutor will not require a new trial when the evidence of guilt is overwhelming. See *Darden* v. *Wainwright*, 477 U.S. 168, 182 (1986). In this case the jury acquitted the defendant of

---

[9]The judge gave the following curative instructions: "With respect to what the facts are, you are the sole determinants of what the facts are in this case. And what the lawyers say are the facts is not to be considered by you as the facts. You are the determinants of what the facts are in this case, based upon all of the evidence that you hear in this case, and your own common sense and experience of life, and the way that you apply that experience of life to the evidence in determining the facts."

[10]The prosecutor also referred to an expert retained by the defendant as a "charlatan." Although clearly improper, the defendant did not object to this statement. See *Commonwealth* v. *Cruz*, 424 Mass. 207, 212 (1997). Because the defense expert testified that at the time of the accident the blood alcohol test administered to the defendant was not scientifically reliable, and because the defendant was acquitted of all charges relating to intoxication, we find no substantial risk of a miscarriage of justice in the prosecutor's statement.

all but the two misdemeanor offenses mentioned above. As to those two offenses, there was compelling evidence that the defendant was not driving within the speed limit at the time of the accident, and the defendant virtually conceded his guilt on those offenses during his own testimony.[11] The prosecutor's comments were ineffective in convincing the jury that the defense on the more serious offenses was a "sham." For these reasons, we conclude that this improper statement also did not prejudice the defendant.

4. At sentencing, the judge stated several times that he was considering the sentence in light of the fact that a death was involved, among other factors.[12] The defendant argues that it was unlawful for the judge to take Archibald's death into consideration where he had been acquitted of the homicide-related indictments. The Commonwealth responds that the sentence was lawful because the judge merely took into account the consequences of the defendant's conduct. It suggests that the judge properly could consider the possibility that the jury

---

[11]The defendant testified that he was traveling approximately forty-five miles per hour in a thirty mile per hour zone. During cross-examination, he admitted he was "speeding." Perhaps with these admissions in mind, the prosecutor's closing argument was directed almost exclusively to the issue whether the defendant caused Archibald's death, either by driving recklessly or driving while intoxicated. The jury acquitted the defendant of those charges.

[12]The judge made the following statements:

"[A]s far as I'm concerned, when there is a death involved that is related to the offense, the normal practice — and all it is is a practice — the normal practice of imposition of court costs, or placing — in this case where we have a finding of guilt by a jury, placing a Defendant on probation, is inappropriate. Where there is a death involved, it seems to me the whole matter of sentencing must be considered very carefully and in a different light. And that in my view is only consistent with our society's respect for human life in the first place.

"So, when I consider this young man's driving record, when I consider that letter was sent to him in . . . 1993 by the senior officers in the Bedford Police Department, as well as the testimony that was introduced during the trial, and consider all of those things in the context of the finding that the jury made, and obviously when I consider all of those things in the context of the death of Daniel Archibald, in my view there is really no alternative but to sentence him to a period of incarceration."

may have determined that the defendant's actions were not the proximate cause of Archibald's death, but did contribute to it.

The sentence imposed by the judge concerned only the defendant's conviction for operating negligently to endanger. The maximum sentence for a first offense is a term of imprisonment of two years. G. L. c. 90, § 24 (2) (*a*). The defendant was sentenced to a term of one year in a house of correction, with six months to serve and the balance suspended. The sentence is well within the permissible statutory limit. See *id*. It is not within our power to review a lawful sentence. *Commonwealth* v. *D'Amour*, 428 Mass. 725, 746 (1999). *Commonwealth* v. *Woodward*, 427 Mass. 659, 683 (1998). That authority is delegated to the Appellate Division of the Superior Court. G. L. c. 278, §§ 28A-28C. Where it appears, however, that a defendant was sentenced for a crime other than that for which he was convicted, it is within our power to review the sentence. See *Commonwealth* v. *Coleman*, 390 Mass. 797, 804 (1984). See also *Commonwealth* v. *Woodward*, *supra* at 684 n.40. The defendant argues that the difference between motor vehicle homicide while operating recklessly or negligently (a crime of which the defendant was acquitted) and negligently or recklessly operating a motor vehicle so as to endanger the safety of the public (a crime of which the defendant was convicted) is the causation of death. Compare G. L. c. 90, § 24G (*a*), with G. L. c. 90, § 24 (2) (*a*). The judge stated that probation was the "normal" sentence in a case of the latter.[13] The judge had earlier said that "the person who was operating the motor vehicle so as to endanger the lives and safety of the public [is] responsible for the fatality," and that, based on the defendant's driving record and Archibald's death, there was "no alternative" but to sentence the defendant to a term of incarceration. It appears to us from these statements that the judge may have sentenced the defendant more harshly than he otherwise would have because he believed the defendant's actions caused the death of Daniel Archibald.

In order to clarify whether the judge sentenced the defendant more severely because he held him responsible for Archibald's

---

[13]A Superior Court probation officer had indicated that the defendant was a candidate for probation.

death, we remand the case to the Superior Court for resentencing solely on the charge of which the defendant was convicted.[14]

*So ordered.*

---

[14]The defendant's sentence had been stayed, pending appeal, by a single justice of the Appeals Court and then a single justice of this court.