STATE OF MAINE                                   SUPERIOR COURT
KENNEBEC, ss                                     CRIMINAL ACTION
                                                 DOCKET NO. CR-08-955

STATE OF MAINE

v.                                               ORDER ON DEFENDANT'S
                                                 MOTION TO SUPPRESS

EMMANUEL REYNOLDS

         Defendant

The defendant seeks to suppress evidence obtained as a result of a bail search. For the following reasons, the motion is granted in part and denied in part.

FINDINGS

On 12/16/08, Winslow Police Officer Nathan Walker was on patrol on Monument Street in Winslow when he noticed the defendant driving a motor vehicle with a female passenger. Officer Walker was familiar with the defendant and knew he was on bail for assault with conditions of random search and testing of the defendant's person, vehicle, and residence for illegal drugs and alcohol. (State's Ex. 1.) Officer Walker stopped the defendant's vehicle for a bail check just after 9:00 p.m. The defendant agreed to go to the police station for a search. The defendant rode with the officer in the back seat of the cruiser. The defendant was not restrained or handcuffed. Maine State Police Trooper Derrick Record also responded to the scene, stood by during the traffic stop, and followed Officer Walker to the police station. He assisted based on concerns for officer safety.

In the bathroom at the station, Officer Walker asked the defendant to remove his clothes but not his underwear. Officer Walker searched the defendant's clothes but not his person. Officer Walker found nothing and noted no bulges to indicate anything was taped under the defendant's scrotum, which Officer Walker had heard from a

1

confidential informant was the defendant's practice with regard to hiding drugs. The defendant put his clothes on.

Officer Walker then told the defendant the officer intended to search the defendant's apartment and asked if the defendant wanted a ride to the apartment. The defendant agreed to accompany the officer and, again, rode unrestrained in the back seat of the cruiser. Trooper Record followed Officer Walker to the apartment.

Upon arrival, the defendant opened the door to the apartment and the officers and the defendant entered the apartment. Andrea Dyer was present with her baby. Officer Walker did not know Ms. Dyer.

While Trooper Record remained in the kitchen-living room area, Officer Walker searched the defendant's bedroom. He lifted the mattress and looked around at items in plain view. He did not search the bureau, closets, or clothing. Officer Walker told the defendant he was "all set" and left the apartment with Trooper Record.

Officer Walker had previously received information from a confidential informant that the defendant was hiding cocaine above the doorframe in the common area of the apartment building outside the defendant's apartment. Trooper Record lifted Officer Walker up toward the top of the doorframe of the door that led to the laundry area. Officer Walker saw white powder in plastic bags. Officer Walker seized the bags. The powder was subsequently tested and identified as cocaine.

The defendant then entered the hallway and walked in and out of the apartment two or three times. Officer Walker informed the defendant the officers had found the cocaine. The defendant replied that the cocaine was not his. The defendant was not taken into custody at that time.

At the request of Officer Walker, Winslow Police Officer Haley Flemming arrived next at the apartment building. Officer Flemming and Trooper Record entered

2

the defendant's apartment. Both spoke to Ms. Dyer. She told the officers that after Officer Walker and Trooper Record left the apartment the first time, the defendant entered, removed a plastic bag from his groin area, and directed her to put the pills in the hood of a sweat shirt. Ms. Dyer showed the officers where the pills were located.

Trooper Record advised Ms. Dyer that she was placing herself and her child in a bad situation. He told her that law enforcement knew the defendant was moving drugs from the apartment, and because she lived there, she must know what was happening. She agreed that she did. Trooper Record stated that she could be considered part of the criminal enterprise and could be charged with criminal offenses. He stated that he could call the Department of Health and Human Services. Trooper Record told Ms. Dyer it was in her best interests to "come clean" and not lie to the officers but he did not threaten any consequences if she did not cooperate.

Officer Walker remained outside while Trooper Record and Officer Flemming were in the apartment. The defendant was with Officer Walker part of the time and was able to come and go, as he wanted. When Trooper Record left the apartment and reported that 152 Oxycodone pills had been found in the apartment in small plastic bags, Officer Walker advised the defendant that he was under arrest, handcuffed him, and placed him in the back seat of the cruiser. No <u>Miranda</u> warnings were given to the defendant at that time.

Kennebec County Sheriff's Department Deputy George Neagle arrived next. Officer Walker asked if the defendant would submit to a canine search of the defendant's person. He agreed. Deputy Neagle was aware the defendant was in custody and did not advise him of the <u>Miranda</u> warnings. Deputy Neagle told the defendant about the narcotic-detection dog and that this was an opportunity for the defendant to help himself by cooperating. Deputy Neagle asked the defendant if he

3

had any drugs and the defendant replied that he did not. He stated that he smoked marijuana earlier that morning. The search was conducted by Deputy Neagle with Officer Walker present. During the search, the dog gave a positive indication at the defendant's crotch area. Deputy Neagle asked again whether the defendant had any drugs on him. The defendant said he did not but changed his earlier statement about having smoked marijuana earlier to having marijuana in his pants. He said he gave the marijuana to someone because he did not want to get caught. No illegal drugs were located during the search. The defendant was placed in the cruiser again.

Officer Flemming took the defendant to the police station. Officer Walker conducted the booking process and read the Miranda warnings to the defendant at approximately 11:59 p.m. Officer Walker read each question and obtained an answer to each question. The defendant understood his rights, did not want to speak to the officer, and signed the form. (State's Ex. 2.) Thereafter, Officer Walker did not ask any questions except routine booking questions.

Officer Walker called the bail commissioner, who set the defendant's bail during the telephone call. Officer Walker told the bail commissioner in the defendant's presence the charges that would be brought against him. Officer Walker completed the uniform summons and complaint and gave it to the defendant.

Officers Walker and Flemming walked with the defendant to the parking lot of the police station. He asked if he could smoke a cigarette. Officer Walker handcuffed the defendant's hands in front of his body as opposed to the rear so he could smoke. The defendant appeared nervous and scared and was almost crying. The defendant stated he would have to "man up" to the pills and admitted the pills were his but denied that the cocaine was his. Neither officer asked questions before or after those statements were made.

Officer Flemming then transported the defendant to the Kennebec County Correctional Facility in Officer Walker's cruiser. Officer Flemming asked no questions en route.

CONCLUSIONS

The defendant's bail conditions provide for random search and testing of his person, vehicle, and residence. The search of the defendant's person at the police station was reasonable, especially considering the information conveyed to law enforcement from a confidential informant.

The defendant did not object to the search of the apartment and agreed to accompany the officers to the apartment. State v. Kremen, 2000 ME 117, ¶ 7, 754 A.2d 964, 967 (a search conducted pursuant to valid consent is an exception to the requirements of a warrant and probable cause). Officer Walker's search of the bedroom did not exceed a search authorized by the bail bond. See State v. Ullring, 1999 ME 183, ¶¶ 12, 19, 27, 741 A.2d 1065, 1068, 1070-71, 1073. The search of the common area, where the defendant had no expectation of privacy, also did not exceed a search authorized by the bail bond. See State v. Griatzky, 587 A.2d 234, 236 (Me. 1991) (defendant had no reasonable expectation of privacy in common areas of her apartment building).

Ms. Dyer, a resident of the apartment, led Trooper Record and Officer Flemming to the Oxycodone pills in the bedroom. See Georgia v. Randolph, 547 U.S. 103, 110-11 (2006) (consent is sufficient when given by a person who reasonably appears to have common authority); State v. Thibodeau, 317 A.2d 172, 177-78 (Me. 1974) (same). The officers' conduct did not exceed a search authorized by the bail bond. See Ullring, 1999 ME 183, ¶¶ 12, 19, 27, 741 A.2d at 1068, 1070-71, 1073.

After the defendant was arrested, he agreed to a search by the drug dog. Kremen, 2000 ME 117, ¶ 7, 754 A.2d at 967. The search was also incident to his arrest.

See State v. Foy, 662 A.2d 238, 241 (Me. 1995) ("A search conducted incident to a lawful arrest is a recognized exception to the general rule that a warrant be obtained in order to conduct a search.").

Statements

The defendant was not in custody until he was placed under arrest by Officer Walker. State v. Bridges, 2003 ME 103, ¶ 26, 829 A.2d 247, 254-55 (test for custody is whether reasonable person in defendant's shoes would feel he was not at liberty to end interrogation and leave). After the arrest, Officers Walker and Flemming and Trooper Record asked no questions and made no statements that they should have known were "reasonably likely to elicit an incriminating response from the suspect." State v. Nixon, 599 A.2d 66, 67 (Me. 1991) (quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980)).

After the arrest and before the Miranda warnings were read to the defendant, Deputy Neagle asked questions of the defendant. The defendant answered the questions voluntarily. State v. Sawyer, 2001 ME 88, ¶ 9, 772 A.2d 1173, 1176 (totality of circumstances analysis to determine voluntariness). The defendant's statements in response to Deputy Neagle's questions are suppressed in the State's case-in-chief. See State v. Durepo, 472 A.2d 919, 922 (Me. 1984) (Miranda mandates that "the prosecution be barred from the use of illegally obtained statements in its case-in-chief").

Derivative Standing

The defendant objects to the admissibility of any statements made allegedly in violation of Ms. Dyer's constitutional rights. However, Ms. Dyer's Miranda rights are personal to her, and the defendant has no standing to assert this alleged violation. United States v. Escobar, 50 F.3d 1414, 1422 (8th Cir. 1995). Moreover, Ms. Dyer was not in custody during her interaction with law enforcement on 12/16/08. See State v. Higgins, 2002 ME 77, ¶ 12, 796 A.2d 50, 54 ("[A] Miranda warning is necessary only if a

defendant is: (1) in custody; and (2) subject to interrogation."). Her statements were voluntary. <u>Sawyer</u>, 2001 ME 88, ¶ 9, 772 A.2d at 1176. The officers did not act improperly during their interaction with her. <u>See</u> <u>State v. Hewes</u>, 558 A.2d 696, 700 (Me. 1989) (directing courts to address, in examining whether statements are voluntary, whether "coercive or improper tactics" were used).[1]

The entry is

> The Defendant's Motion to Suppress is GRANTED as follows: the Defendant's statements to Deputy Neagle are SUPPRESSED in the State's case-in-chief.

> The remainder of the Defendant's Motion to Suppress is DENIED.

Date: May 13, 2009

Nancy Mills
Justice, Superior Court

---

[1] The defendant has offered no case law to support his "derivative status" argument. To the extent he somehow argues that the police conduct violated due process, the facts of this case do not in any way "shock the conscience" or offend a "sense of justice." <u>See</u> <u>Breithaupt v. Abram</u>, 352 U.S. 432, 435-36 (1957) (cognizable substantive due process claim is based on conduct that does not comport with traditional ideas of fair play and decency.).

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CR-2008-00955

**DOCKET RECORD**

DOB: 05/26/1980
Attorney: CHARLES FERRIS                        State's Attorney: EVERT FOWLE
         FERRIS, CHANDLER & CROOK ATTORNEYS-AT-LAW
         11 PARK STREET
         WATERVILLE ME 04901
         APPOINTED 01/13/2009

Filing Document: CRIMINAL COMPLAINT            Major Case Type: FELONY (CLASS A,B,C)
Filing Date: 12/17/2008

## Charge(s)

**1   AGGRAVATED  TRAFFICKING  OF  SCHEDULED  DRUGS   12/16/2008 WINSLOW**
**Seq 8555   17-A   1105-A(1)(B)(1)          Class A**


**2   UNLAWFUL  POSSESSION  OF  OXYCODONE            12/16/2008 WINSLOW**
**Seq 11123 17-A   1107-A(1)(B)(4)         Class C**


**3   VIOLATING  CONDITION  OF  RELEASE             12/16/2008 WINSLOW**
**Seq 9632  15     1092(1)(A)          Class E**


## Docket Events:

12/17/2008 FILING DOCUMENT -  CRIMINAL COMPLAINT FILED ON 12/17/2008

12/17/2008 Charge(s): 1,2,3
          HEARING -  INITIAL APPEARANCE SCHEDULED FOR 12/17/2008 @ 1:00

          NOTICE TO PARTIES/COUNSEL
12/17/2008 Charge(s): 1,2,3
          HEARING -  INITIAL APPEARANCE HELD ON 12/17/2008
          DONALD H MARDEN , JUSTICE
          Defendant Present in Court

          IN CUSTODY - ER TAPE 1058
12/17/2008 Charge(s): 1,2,3
          PLEA -  NO ANSWER ENTERED BY DEFENDANT ON 12/17/2008

12/17/2008 BAIL BOND - $10,000.00 CASH BAIL BOND SET BY COURT ON 12/17/2008
          DONALD H MARDEN , JUSTICE
          OR $50,000.00 SURETY
12/17/2008 Charge(s): 1,2,3
          HEARING -  STATUS CONFERENCE SCHEDULED FOR 02/24/2009 @ 10:00

12/17/2008 MOTION -  MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 12/17/2008

12/18/2008 MOTION -  MOTION TO AMEND COMPLAINT FILED BY STATE ON 12/18/2008


12/23/2008 MOTION -  MOTION FOR APPOINTMENT OF CNSL GRANTED ON 12/18/2008
           DONALD H MARDEN , JUSTICE
           COPY TO PARTIES/COUNSEL
12/23/2008 Party(s):  EMMANUEL REYNOLDS
           ATTORNEY -  APPOINTED ORDERED ON 12/18/2008


           Attorney:  JOHN O'DONNELL
12/23/2008 Charge(s): 1,2,3
           HEARING -  STATUS CONFERENCE NOTICE SENT ON 01/14/2009


01/09/2009 BAIL BOND -  CASH BAIL BOND FILED ON 01/09/2009


01/09/2009 BAIL BOND - $10,000.00 CASH BAIL BOND FILED ON 01/09/2009


           Bail Receipt Type: CR
           Bail Amt:  $10,000
                                   Receipt Type: CK
           Date Bailed: 01/09/2009    Prvdr Name: TARA  PELLETIER
                                   Rtrn Name: TARA  PELLETIER


01/12/2009 MOTION -  MOTION FOR WITHDRAWAL OF CNSL FILED BY COUNSEL ON 01/12/2009


01/14/2009 MOTION -  MOTION FOR WITHDRAWAL OF CNSL GRANTED ON 01/13/2009
           NANCY  MILLS , JUSTICE
           1/14/09: COPY TO COUNSEL & DA THIS DATE
01/14/2009 Party(s):  EMMANUEL REYNOLDS
           ATTORNEY -  WITHDRAWN ORDERED ON 01/13/2009


           Attorney:  JOHN O'DONNELL
01/14/2009 Party(s):  EMMANUEL REYNOLDS
           ATTORNEY -  APPOINTED ORDERED ON 01/13/2009


           Attorney:  CHARLES FERRIS
02/05/2009 Charge(s): 1,2,3
           HEARING -  STATUS CONFERENCE NOT HELD ON 02/04/2009


02/05/2009 Charge(s): 1,2,3
           SUPPLEMENTAL FILING -  INDICTMENT FILED ON 02/05/2009


02/05/2009 Charge(s): 1,2,3
           HEARING -  ARRAIGNMENT SCHEDULED FOR 02/17/2009 @ 8:30
           JOHN  NIVISON , JUSTICE
02/05/2009 Charge(s): 1,2,3
           HEARING -  ARRAIGNMENT NOTICE SENT ON 02/05/2009


02/17/2009 Charge(s): 1,2,3
           HEARING -  ARRAIGNMENT HELD ON 02/17/2009
           JOHN  NIVISON , JUSTICE
           READING WAIVED.  DEFENDANT INFORMED OF CHARGES.  COPY OF INDICTMENT/INFORMATION GIVEN TO
           DEFENDANT.  21 DAYS TO FILE MOTIONS
02/17/2009 Charge(s): 1,2,3

PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 02/17/2009

02/17/2009 BAIL BOND - CASH BAIL BOND COND RELEASE ISSUED ON 02/17/2009
JOHN NIVISON , JUSTICE
$10,000.00 AS POSTED...AMENDED BAIL CONDITIONS.
02/27/2009 MOTION - MOTION FOR FUNDS FILED BY DEFENDANT ON 02/27/2009

02/27/2009 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 02/27/2009

03/04/2009 MOTION - MOTION FOR FUNDS GRANTED ON 03/04/2009
JOHN NIVISON , JUSTICE
COPY TO PARTIES/COUNSEL
03/04/2009 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 04/08/2009 @ 10:00

NOTICE TO PARTIES/COUNSEL
04/03/2009 MOTION - MOTION TO REVOKE BAIL FILED BY STATE ON 04/03/2009

04/06/2009 MOTION - MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 04/03/2009

04/06/2009 Charge(s): 1,2,3
HEARING - INITIAL APPEARANCE HELD ON 04/03/2009
JOSEPH M JABAR , JUSTICE
Defendant Present in Court

INITIAL APPEARANCE ON MOTION TO REVOKE BAIL
04/06/2009 BAIL BOND - $10,000.00 CASH BAIL BOND CONTINUED AS POSTED ON 04/03/2009
JOSEPH M JABAR , JUSTICE
04/21/2009 HEARING - MOTION TO SUPPRESS HELD ON 04/08/2009
NANCY MILLS , JUSTICE
Attorney: CHARLES FERRIS
Reporter: TAMMY DROUIN
Defendant Present in Court
04/21/2009 OTHER FILING - OTHER DOCUMENT FILED ON 04/16/2009

DEFENDANT'S ANSWER TO THE STATE'S MOTION FOR REVOCATION OF PRE-CONVICTION BAIL
04/21/2009 MOTION - MOTION FOR ENLARGEMENT OF TIME FILED BY DEFENDANT ON 04/16/2009

Attorney: CHARLES FERRIS
04/21/2009 MOTION - OTHER MOTION FILED BY DEFENDANT ON 04/16/2009

Attorney: CHARLES FERRIS
MOTION FOR IDENTIFICATION OF CONFIDENTIAL INFORMANT WITH INCORPORATED MEMO
04/21/2009 MOTION - MOTION FOR DISCOVERY FILED BY DEFENDANT ON 04/16/2009

MOTION FOR SPECIFIC DISCOVERY
05/14/2009 MOTION - MOTION TO SUPPRESS UNDER ADVISEMENT ON 04/08/2009
NANCY MILLS , JUSTICE
05/14/2009 MOTION - MOTION TO SUPPRESS GRANTED ON 05/14/2009
NANCY MILLS , JUSTICE
COPY TO PARTIES/COUNSEL                                    THE DEFENDANT'S
MOTION TO SUPPRESS IS GRANTED AS FOLLOWS: THE DEFENDANT'S STATEMENTS TO DEPUTY NEAGLE ARE
SUPPRESSED IN THE STATE'S CASE IN CHIEF, THE REMAINDER OF THE DEFENDANT'S MOTION TO
SUPPRESS IS DENIED

05/14/2009 HEARING -   MOTION TO REVOKE BAIL SCHEDULED FOR 07/08/2009 @ 8:30

        NOTICE   TO PARTIES/COUNSEL
05/14/2009 HEARING -   MOTION FOR DISCOVERY SCHEDULED FOR 07/08/2009 @ 8:30

        NOTICE   TO PARTIES/COUNSEL
05/14/2009 HEARING -   OTHER MOTION SCHEDULED FOR 07/08/2009 @ 8:30

        MOTION FOR IDENTIFICATION OF CONFIDENTIAL INFORMANT
05/14/2009 MOTION -   MOTION FOR APPOINTMENT OF CNSL GRANTED ON 04/06/2009
        NANCY  MILLS , JUSTICE
        COPY TO PARTIES/COUNSEL

A TRUE COPY
ATTEST:  _____
                    Clerk